[Civ. No. 7268. Fourth Dist. Oct. 28, 1964.]

P. M. MARTIN et al., Plaintiffs and Respondents, v. TOWN AND COUNTRY DEVELOPMENT, INC., Defendant and Appellant.

[Civ. No. 7269. Fourth Dist. Oct. 28, 1964.]

ROBERT O. CURRAN et al., Plaintiffs and Respondents, v. TOWN AND COUNTRY DEVELOPMENT, INC., Defendant and Appellant.

(Consolidated Cases.)

Gray, Cary, Ames & Frye, R. Reaves Elledge, Jr., and John W. Poulos for Defendant and Appellant.

Golden, McDevitt & Martin and O'Neill P. Martin for Plaintiffs and Respondents.

BROWN (Gerald), J.—The defendant Town and Country Development, Inc., appeals from money judgments favoring the plaintiffs, P. M. Martin, Margaret H. Martin and Thomas Martin, 4 Civil No. 7268, and Robert O. Curran and Audrey D. Curran, 4 Civil No. 7269. The actions were consolidated for trial and appeal.

The defendant owned and operated for profit the Town and Country Hotel and the adjoining Town and Country Club, a recreational facility. Membership in the club was open to the general public. It could be obtained through acceptance by the membership committee and payment of an initiation fee and monthly dues. In general, the club provided athletic facilities and organized social events which varied from season to season.

In order to expand, the defendant decided to sell additional stock. In August 1954 it secured a permit authorizing the issuance and sale of common and preferred stocks; the permit sanctioned sale of units of five shares of preferred and one share of common for $250 a unit.

To stimulate sales an offer was made to members of the club, credit card holders of the hotel and the public to allow a dues-free club membership with a minimum purchase of 10 units of stock.

A letter sent to club members stated: "An investment of $2500. entitles club members to a full membership without dues as long as they are owners of this amount or more of Town and Country. Membership is non-transferable with sale of stock. Initiation fees will not be refundable."

A club brochure contained the following offer: "Since we only have $50,000.00 more in stock to sell before we close the stock issue it is advisable that if you want to have an interest in the Town and Country Development, Inc., and also to have a *lifetime membership* with no dues in addition, better do so in the very near future. To receive a *lifetime membership* in addition to guaranteed 7% on preferred stock and percentage declared on profits for common, you are required to invest $2500 or more. Any lesser amount invested entitles you to the profitable shares in our growing development but does not entitle you to the *lifetime membership*. Each units [sic] is $250 which includes 1 share of common, and 5 shares of preferred. Please keep in mind that this is your last chance to share in the profits." (Emphasis added.)

In September 1954 the plaintiffs, P. M. Martin and Mar-

garet H. Martin, members of the club, purchased 10 units. A signed stock subscription agreement reads:

"STOCK SUBSCRIPTION AGREEMENT

TO

"TOWN AND COUNTRY DEVELOPMENT, INC.

"I, P. M. MARTIN and/or MARGARET H. MARTIN, do hereby subscribe for ten units, each unit consisting of 5 shares of the Preferred stock of TOWN AND COUNTRY DEVELOPMENT, INC., a corporation, and 1 share of the common stock of TOWN AND COUNTRY DEVELOPMENT, INC., a corporation, for the price of $250.00 per unit for cash, lawful money of the United States, payable to said corporation.

"I hereby acknowledge receipt of a copy of the permit of the Commissioner of Corporations, dated August 19, 1954, authorizing the taking of this subscription, a copy of said permit being attached to this subscription.

"Signed "P. M. Martin /s/

"Margaret H. Martin /s/

"NOTE: Payable only by check made payable only to TOWN AND COUNTRY DEVELOPMENT, INC., a corporation.

"ACCEPTED:

"Florence Mae Callagy Sec. /s/

"_____

"Secretary of Town and
Country Development, Inc."

A stock certificate was issued October 1, 1954 to the Martins.

After this purchase the Martins paid no further club membership dues. Mr. Martin testified he had several conversations with officers and agents of the defendant, before the purchase, during which the term "lifetime membership" was used. He also stated the reason he purchased the stock was "the opportunity to have the facilities of the Club without payment of dues . . ." and further he would not have invested $2,500, if ". . . it was not for life membership with free dues."

In July 1955 the Martins purchased an additional 10 units for their son, the plaintiff Thomas Martin. A stock subscription agreement was signed. Mr. and Mrs. Martin and their son all testified the phrase "lifetime membership" was used

during the course of a conversation before the purchase, between Mr. Martin and the president of the defendant corporation. The elder Martin stated he would not have purchased the stock without the "lifetime membership" feature for his son.

In October 1954 the plaintiffs, Robert O. and Audrey D. Curran purchased 10 units of stock. Mr. Curran gave testimony of conversations with officers of the corporation and printed advertising material was introduced into evidence, from which the court could conclude that they were to receive a membership for their lifetime in the club. He also stated they would not have purchased the stock without this feature.

In January 1959 at its annual shareholder meeting the defendant outlined plans to lease the hotel and club to an embryonic corporation; by December 1959 Atlas Hotels, Inc., was organized, containing substantially the same stockholders as the defendant, and a lease was executed. In October 1960 the board of directors of Atlas passed a resolution closing the club effective January 1, 1961. This action was attributed primarily to a decline in membership and a need for additional convention and banquet facilities for the hotel. The social and athletic facilities of the club were converted to hotel use. After the club was closed the plaintiffs filed suit for damages for breach of contract.

In holding for the plaintiffs, the trial court found that the plaintiffs accepted the defendant's offer to grant a dues-free "lifetime membership for themselves and their families" in the club. During the trial, the plaintiffs had sought to introduce evidence of rates charged by comparable clubs in the San Diego area. The defendant successfully objected to the admission of this evidence. As damages the trial court awarded the plaintiff in each instance the cash value of his membership. This was computed by taking the age of each plaintiff, estimating his life expectancy by the use of an actuarial table, and multiplying this expectancy by membership dues in the club at the rate charged on the date of the breach. The calculated figure was discounted to its present cash value. Using this method, the court awarded Mr. and Mrs. Martin, $3,047.62; Thomas Martin $4,057.87 and costs; and Mr. and Mrs. Curran, $2,928.82 and costs.

In support of a motion for a new trial, the defendant argued for the first time that the admission of extrinsic evidence of the promise of "lifetime membership" in the club

must be disregarded on the theory that the stock subscription agreement was an integrated agreement between the parties containing no mention of the membership feature of the purchase, and evidence varying its terms violated the parol evidence rule. The motion for a new trial was denied.

The defendant asserts three reasons for reversing the judgments of the trial court.

First, it contends the trial court erroneously based its judgment upon parol evidence which varied the terms of the stock subscription agreements in violation of the parol evidence rule. It is pointed out that the parol evidence rule is a rule of substantive law, not of evidence and if extrinsic evidence is erroneously admitted in violation of the rule, it has no force and effect. Objection to the extrinsic evidence on this ground was not raised when the evidence was introduced; in fact, both sides chose to introduce extrinsic evidence, and it was not until the trial was over and the case was decided that defendant objected, not to its own extrinsic evidence, but to that of the plaintiffs. *Calabrese* v. *Rexall Drug & Chemical Co.*, 218 Cal.App.2d 774, 780-781 [32 Cal.Rptr. 665] states: "The former view that the parol evidence rule was one of substantive law, requiring no objection to be voiced at the trial, has been abrogated in this state through the decision in *Pao Ch'en Lee* v. *Gregoriou*, 50 Cal.2d 502, 506 [326 P.2d 135]. . . ."

This rule is based upon a policy which requires the raising of all issues in the trial court as a prerequisite to appellate review, and the principle that incompetent evidence admitted without objection may sustain a judgment. (*Santa Clara Properties Co.* v. *R.L.C., Inc.*, 217 Cal.App.2d 840, 849 [32 Cal.Rptr. 333].) ▮ Accordingly the objection to the admission of extrinsic evidence on the ground that it violates the parol evidence rule came too late. (*French* v. *Brinkman*, 60 Cal.2d 547, 553 [35 Cal.Rptr. 289, 387 P.2d 1] ; *Hulse* v. *Julliard Fancy Foods*,* (37 Cal.Rptr. 409) ; *Collins* v. *Home Savings & Loan Assn.*, 205 Cal.App.2d 86, 96 [22 Cal.Rptr. 817] ; *Dunlap* v. *Bellah*, 184 Cal.App.2d 579, 587 [7 Cal.Rptr. 766].) On the other hand, even a timely objection would not have prevented the admissibility of evidence of a collateral agreement respecting lifetime membership, and if ambiguous, its meaning. (*American Ind. Sales Corp.* v. *Airscope, Inc.*,

---

*A hearing was granted by the Supreme Court on April 29, 1964. The final opinion of that court is reported in 61 Cal.2d 571 [39 Cal. Rptr, 529, 394 P.2d 65].

44 Cal.2d 393, 397 [282 P.2d 504, 49 A.L.R.2d 1344] ; *Simmons* v. *California Institute of Technology*, 34 Cal.2d 264, 274 [209 P.2d 581].) ■■■ Secondly, the defendant argues the interpretation of the phrase "lifetime membership" is a question of law and the trial court incorrectly construed the phrase to mean the lifetime of the plaintiffs. It is suggested the proper construction should include: "As long as (1) the defendant continued to maintain the Club, and (2) the life member continued to (a) own the stock and (b) abide by the Club rules and regulations. . . ."; that the extrinsic evidence on this feature of the case was not reasonably susceptible of an inference which would support the judgment, hence the trial court's interpretation rested entirely upon the language of the contract and amounts to a ruling of law which does not bind the appellate court. This view is incorrect. The record shows substantial written and oral evidence was admitted on this issue, for example, a letter to club members from defendant offering "full membership without dues as long as *they* are owners of this amount or more of Town and Country" (italics added) ; a brochure distributed using the phrase "lifetime membership" in three places; and testimony by one of the plaintiffs justifying the conclusion that defendant's officers in effect had told them the membership was to be measured by their lifetime, not that of the club.

■■■ Under the circumstances: "The rule is that an 'appellate court will accept or adhere to the interpretation [of a contract] adopted by the trial court—and not substitute another of its own—. . . where parol evidence was introduced in aid of its interpretation, and such evidence . . . is such that conflicting inferences may be drawn therefrom.' [Citations.] Certainly inferences may be drawn from the contract and the surrounding circumstances here which would support the finding which we must presume was made by the trial court relative to the intention of the contracting parties." (*Estate of Rule,* 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319].)

■■■ Even if we assume the interpretation is one of law, it is also the rule that an interpretation placed upon a contract by the trial court will be accepted by the appellate court if the interpretation is reasonable. (*Prickett* v. *Royal Insurance Co., Ltd.,* 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907, 86 A.L.R.2d 711] ; *Steiner Lumber Co.* v. *Sapp,* 216 Cal.App.2d 800 [31 Cal.Rptr. 276, 32 Cal.Rptr. 395].)

■ We cannot say as a matter of law that the trial court's determination of the phrase "lifetime membership" is unreasonable. (Civ. Code, §§ 1644, 1649, 1654, 1656; Code Civ. Proc., § 1864; see also *Masonic Country Club of Western Michigan* v. *Holden*, 12 F.2d 951, 955, where the court took judicial notice of the ordinary and popular sense of the phrase "life membership" as meaning ". . . that . . . kind of membership in clubs and organizations . . . subject to earlier termination only by resignation or dishonorable expulsion.")

■ Finally, the defendant maintains the damages awarded were speculative and consequently may not be recovered. It is said that no evidence was introduced as to whether or not the plaintiffs intended to reside in the San Diego area for the rest of their lives; that their memberships were contingent upon continued ownership of 10 units of stock and that they follow the Club rules and regulations. The argument emphasizes uncertainties. Overlooked, however, is the salient point that the uncertainty was caused by defendant's breach of contract when it closed the Club.

■ While it is true the plaintiffs must show with reasonable certainty that they have been damaged because of the wrongful conduct of the defendant, "once the cause and existence of damages have been so established, recovery will not be denied because the damages are difficult of ascertainment." (*Stott* v. *Johnston*, 36 Cal.2d 864, 875 [229 P.2d 348, 28 A.L.R.2d 580].) Liability cannot be evaded because damages cannot be measured with exactness. (*Flagg* v. *Andrew Williams Stores, Inc.*, 127 Cal.App.2d 165, 174 [273 P.2d 294]; *Bouchard* v. *Cole*, 143 Cal.App.2d 93, 98 [299 P.2d 697]; *Kennard* v. *Glick*, 183 Cal.App.2d 246, 251 [7 Cal.Rptr. 88].) The defendant does not attack the formula used by the trial court in arriving at the amount of damage caused by the defendant's breach.

Under the circumstances here it cannot be said the judgments are unreasonable. (*Howard* v. *Adams*, 16 Cal.2d 253, 259 [105 P.2d 971, 130 A.L.R. 1003].)

Judgments affirmed.

Griffin, P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1964.