[S.F. No. 23106. In Bank. July 3, 1974.]

WARREN O. SCHROEDER et al., Plaintiffs and Respondents, v.
AUTO DRIVEAWAY COMPANY et al., Defendants and Appellants.

910

## Counsel

William L. Ferdon, Robert W. Tollen and Chickering & Gregory for Defendants and Appellants.

Joseph B. Harvey for Plaintiffs and Respondents.

## Opinion

**TOBRINER, J.**—Defendants appeal from a judgment following jury verdict for plaintiff Madeleine Schroeder awarding her $25,000 in compensatory damages and $10,000 in punitive damages. We uphold the judgment as to liability for the reasons stated in the opinion of the Court of Appeal, which, as to the issue of liability, we adopt as our opinion. Although defendants maintain that the damage award is excessive, they did not raise this issue by a motion for new trial in the superior court and may not present it for the first time on appeal. Moreover, we do not find the damage award excessive. We conclude that the judgment as to both liability and damages should be affirmed.

1. *Statement of facts.*

In 1971, plaintiffs Mr. and Mrs. Schroeder, an elderly couple, decided to move from Phoenix, Arizona to Susanville, California. Mrs. Schroeder had purchased a large quantity of new and secondhand goods, and intended to open a store in Susanville for the sale of this merchandise. Plaintiffs also bought a van for the purpose of transporting the goods to Susanville, and sought to hire a driver for the van.

Defendant Auto Driveaway Company is a common carrier that furnishes drivers for hire. Mrs. Schroeder contacted defendant Trimble, the Phoenix representative of Auto Driveaway, to arrange for a driver for the van. Trimble called at the plaintiff's home on August 13, 1971, observed the partially loaded van, and filled out a shipping order and freight bill which he gave to plaintiffs. This document provided that for a consideration of $189 ($139 in advance; $50 on delivery) Auto Driveaway would pick up the loaded van and drive it to Susanville.

On the back of the form appeared 15 conditions, all but one, which required a full gas tank at time of pick-up, in exceedingly small print. Condition number four stated a limitation of liability and read as follows:

"4. Unless a greater value is declared hereon, the owner hereby agrees and declares that the value of the baggage, personal effects and sporting equipment described herein is released to a value not exceeding $50.00 per shipment.

"The agreed or declared value of the property is hereby specifically stated by the owner to be not exceeding $——————— per shipment. For all shipments where luggage and personal effects exceed $50.00 in value, there will be an additional charge. Driveaway cannot accept shipments wherein the personal contents exceed $250.00 in value."

Condition five specified items which should not be transported in the car; the list includes binoculars, cameras, guns, and "articles of unusual value."

According to Mrs. Schroeder, neither she nor her husband read the reverse side of the contract. Trimble did not call their attention to the provisions on the back of the contract, discuss the weight or contents of the van, or inform them of any limitation upon Auto Driveaway's responsibility for the value of the goods carried. When she was handed the contract, Mrs. Schroeder asked Trimble "am I . . . signing my life away"; Trimble reassured her, "no, it is a matter of picking up your van and delivering it to the destination." Mrs. Schroeder testified, "I said, you know there is [*sic*] very valuable goods on there and I have worked hard to get it and I have put all my money in there I had, because I wanted these goods to arrive here safely. . . ."

When Trimble picked up the van, it was loaded with 97 wax chicken boxes (20 x 30 x 12 inches), other smaller cartons, a trunk, 2 foot-lockers, and a floor polishing machine.[1] The load occupied the interior of a van 8½ feet high and 14 feet long, and weighed about 3,840 pounds. Trimble was in a position to observe the extent and weight of the load.

Trimble hired defendant Roberts to drive the van to Susanville. Under both Interstate Commerce Regulations and the contract between Auto Driveaway and plaintiffs, the driver was required to proceed by the most expeditious and suitable route. Instead she and her companion, defendant Linnuste, decided to detour to the Grand Canyon for sight-seeing. About 20 miles north of Flagstaff, on their way to the Grand Canyon, the van skidded off a mountain road. The van itself was totally destroyed, and much of the contents damaged.

---

[1] We shall discuss the contents of the van, and their value, in connection with our analysis of the award of compensatory damages (part 3 of this opinion).

Auto Driveaway towed the van back to Flagstaff, and left the contents, covered with a polyethylene sheet, in the yard of the towing company. Although some cartons were wet, Auto Driveaway did not remove and dry the contents. Several days later an unidentified person notified plaintiffs, who had arrived in Susanville, of the accident. Defendants did not tell plaintiffs the location of the van or its goods nor attempt to complete the transportation of the goods to Susanville. When plaintiffs engaged an attorney to communicate with Auto Driveaway that defendant responded that it was not responsible for the accident. Finally, after suit was filed in January of 1972, Auto Driveaway told plaintiffs where their goods were stored and made arrangements with plaintiffs' attorney for transportation of the goods to Susanville. When the goods arrived in February large quantities were missing, and much of that received was broken, wet, and mildewed.

Plaintiffs' complaint is in three counts. The first is for breach of the contract, comprising the front of the shipping order and freight bill, under which defendant Auto Driveaway undertook to deliver the van and its contents, undamaged, to Susanville. The second count alleges that Trimble fraudulently misrepresented that Auto Driveaway was authorized to transport plaintiffs' van and goods, although he knew that the value of the goods far exceeded $250. The third count asserted that defendants converted the van and its contents.

The jury returned a verdict for plaintiff Madeleine Schroeder, and against the defendants, for $25,000 compensatory and $10,000 punitive damages. Defendants did not move for a new trial, but appealed from the judgment.

## 2. *Issues concerning liability.*

We believe that the Court of Appeal correctly resolved the issues pertaining to the liability of the defendants.[2] We therefore adopt the relevant portion of the opinion of the Court of Appeal prepared by Justice Pierce as and for the opinion of this court. The opinion follows:*

---

[2]Defendants contested their liability in argument to the Court of Appeal, but abandoned those contentions before this court, and limited their appeal to an attack upon the jury's award of damages.

*Brackets together, in this manner [ ] without enclosing material, are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. (See *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 311, fn. 2 [70 Cal.Rptr. 849, 444 P.2d 481].)

*Adequacy of Instructions*

Since Auto Driveaway is a common carrier in interstate commerce, it is subject, through 49 U.S.C.A. section 319, to the provisions of section 20(11) of the same title. Defendants offered and the court gave the following instruction: "Any common carrier by motor vehicle receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to said property caused by it; and any said common carrier by motor vehicle so receiving property for transportation from a point in one state to a point in another state shall be liable to the lawful holder of said receipt or bill of lading, for the full actual loss, damage or injury to such property caused by it."

On appeal, defendants contend that this instruction "did not properly state the law."[3] To the contrary, the instruction read in context *is* an accurate statement. It states the general rule applicable to shipments of property in interstate commerce as set forth in 49 U.S.C.A. section 20(11). There are exceptions and limitations to the general rule expressed in that section. They were set forth in additional instructions given by the court almost precisely in the language of the statute covered. ([ ] These instructions advise the jury of the general rule applicable to common carriers such as those we are discussing—liability for full actual damage to property caused by it notwithstanding any limitation of liability in any contract with a proviso that the Interstate Commerce Commission may expressly order the common carrier to maintain lower rates dependent upon the value declared in writing by the shipper—in which case the carrier's obligation would not exceed the agreed-upon value. There is a further condition, however, that such limitation "is not effective unless the shipper is informed of the limitation and is given a fair opportunity to choose between a higher and lower liability or to refuse to make the shipment if the property is of a value unacceptable for shipment by the carrier.")

The jury was further instructed that under the terms of a specified order of the Interstate Commerce Commission, Auto Driveaway was authorized to limit its liability only in regard to personal effects not exceeding 500 pounds in weight. [ ]

■ It is not improper for the court to refuse a proposed instruction where the instructions given include the substance of the proposed in-

---

[3]Appellants' opening brief [ ] states that this instruction was "offered by Mrs. Schroeder." The clerk's transcript shows that it was "DEFENDANT'S INSTRUCTION No. 2." If that statement is correct, defendants cannot now complain that an instruction requested by them was given.

struction. (*Crooks* v. *Pirrone* (1964) 228 Cal.App.2d 549, 554 [39 Cal. Rptr. 622].) That was accomplished in the case at bench. Moreover, the instruction offered by defendants and refused by the court, and of which refusal defendants complain, was so worded that it would have been confusing to the jury to include it.[4]

It has not been pointed out to this court wherein the court failed to cover adequately both pros and cons of an interstate carrier's obligation. As against defendants' assignment of error we hold that the court's jury instructions are adequate.

*The Alleged Misrepresentation As a*
*Proximate Cause of Injury and Damage*

Defendants on appeal, assuming arguendo that they were guilty of the misrepresentations contended by the Schroeders, argue that any damages suffered did not flow from the alleged deceit and that the value of the goods lost or damaged does not measure their loss. Defendants refer to Civil Code section 1709 which provides as follows: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." They also refer to Civil Code section 3333: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Defendants cite *Gagne* v. *Bertran* (1954) 43 Cal.2d 481 [275 P.2d 15], as supporting their theory. We are at a loss to follow them in their insistence that *Gagne* affords them comfort. In that decision, [we] had before [us] a case where plaintiffs had purchased real estate from defendant who had deceived them substantially regarding the depth of a fill on the property. [We] held that the damage proximately caused by the deceit was the difference between the amount the plaintiffs had paid for the property and what it was actually worth.

---

[4]The offered instruction states: "A shipper may by written contract with a carrier, agree to a limitation stated therein upon the amount of the carrier's liability in case the property carried is lost or damaged. Said written contract, however, must provide that the shipper may insert therein, if he desires, a higher figure for the carrier's potential liability, at a higher fee for shipment. Such a written contract, moreover, is effective if signed by the shipper even though through his own neglect or inattention without fraud or menace by the carrier, the shipper fails to fully read the limitations provisions of the contract."

True, the words "without fraud or menace by the carrier" are tucked into the instruction. But the instruction does not inform the jury that a shipper who fails fully to read the limitations of the contract BECAUSE of fraud by the carrier is NOT precluded from recovery.

■ There is no similarity between *Gagne, supra,* and this case. Here, under the Schroeders' theory, defendant Auto Driveaway, acting through its agents (and most specifically defendant Trimble), deceived them into believing their goods were being shipped under a contract whereby the carrier's obligation was to carry and deliver the goods safely to Susanville; and that it would pay the full value of any loss en route. Because of a loss flowing directly from defendants' deceit and as a proximate result, the Schroeders suffered damage. Defendants would have been liable under these facts at common law for the value of the goods lost as expressed in Dean Prosser's third edition on Torts, pages 748-749, which says: "Thus if the plaintiff stores his goods in a warehouse represented to him to be fireproof, and they are destroyed when it burns down, he can recover; and likewise where he invests in an automobile agency after false assurances of profits made by similar agencies, and goes bankrupt." Defendants would have been liable under these facts under the Carmack Amendment (49 U.S.C.A. §§ 20(11), 319), as expressed in the general rule stated in that act.

*Adequacy of Proof Excepting Proof of Damages—Proof of Fraud and Deceit*

We need not quote in their entirety Civil Code section 1709 defining fraudulent deceit and/or Civil Code section 1572 defining fraud. They state hornbook law. [ ] ■ We have stated facts in the record proving all of [the] elements [of these torts] (except damages) in some detail. The Schroeders were not informed of conditions and limitations which had been imposed by the Interstate Commerce Commission upon Auto Driveaway if it was to contract with a shipper to carry goods for which it would be liable for less than full value of loss. Before it could so contract, it was required by law and by the Interstate Commerce Commission not only so to advise the shipper of such limitation but also to [inform] that shipper of his alternative to pay a greater price for carrier liability to reimburse for the full value of all loss. Trimble, according to Mrs. Schroeder, deceived the Schroeders because he knew that the value of the goods in the van was greatly in excess of $250, and its weight greatly in excess of 500 pounds. He also knew that the Schroeders would not have authorized Auto Driveaway to transport the van and its contents had they known of the terms, hidden from them, which were superimposed upon the written instrument by Trimble. [Footnote omitted.]

*Proof of Conversion*

We have noted that the third count of the complaint pleads conversion. Defendants argue that there was no conversion, that conversion can result only from conduct *intended* to affect the chattel and not for mere negligent interference with it. Indeed, that is usually the rule—but as stated by Dean Prosser in the Law of Torts (4th ed.) page 83: "[I]t seems clear that there are situations in which a wilful omission which deprives the plaintiff of his property can serve as a foundation for the action." And in a footnote to that statement the author quotes from a case in Maine as follows: " 'Where B is in possession of the property, or where he has such control over it that he can readily get possession (as where he has stored it with a bailee), and A demands it, and B fails to deliver it, no modern court is going to save B from being a converter on the ground that there was only a nonfeasance.' "

■ A substantial portion of the Schroeders' merchandise as we have stated was never returned to them nor accounted for. As to that portion, the example quoted from Prosser is squarely in point; therefore, as to such property, conversion was a proper remedy. [We end our quotation from the Court of Appeal opinion at this point.]

3. *Issues concerning damages.*

Defendants contend that the award of compensatory and punitive damages is excessive. They failed, however, to raise this issue before the superior court by a motion for new trial.[5] ■ In *Bate* v. *Jolin* (1929) 206 Cal. 504, 508 [274 P. 971] we established that "The point that damages are excessive cannot be raised for the first time on appeal, but must be presented to the lower court on the motion for new trial."[6] ■■■ Consequently defendants, having failed to move for a new trial, cannot now contend that the award of damages is excessive.[7]

[5]Defendants are represented on appeal by new counsel. Appellate counsel do not know why defendants' trial counsel failed to move for a new trial, or to introduce any evidence on the issue of damages.

[6]Accord: *Sholar* v. *Barker* (1962) 211 Cal.App.2d 31, 32-33 [27 Cal.Rptr. 451]; *Reid* v. *Gillespie* (1948) 87 Cal.App.2d 769, 771 [197 P.2d 566]; *Roche* v. *Casissa* (1957) 154 Cal.App.2d 785, 787 [316 P.2d 776] (dictum). On parity of reasoning, a plaintiff who has not sought a new trial cannot argue inadequacy of damages on appeal. (*Jenkins* v. *Dahnert* (1962) 202 Cal.App.2d 567, 568 [21 Cal.Rptr. 15]; *Warner* v. *Urbach* (1955) 131 Cal.App.2d 5, 6 [279 P.2d 1024]; *Alexander* v. *McDonald* (1948) 86 Cal.App.2d 670, 671 [195 P.2d 24].)

[7]Although the effect of defendants' failure to move for a new trial was not raised in the briefs filed in the Court of Appeal, that issue was discussed in the Court of

In view of defendants' contention that the rule stated in *Bate* v. *Jolin, supra,* conflicts with the general principle that findings unsupported by substantial evidence do not bind an appellate court, we explain our reason for adhering to that rule in the present case. When a jury returns its verdict, the trial judge determines whether that verdict as to liability is supported by substantial evidence; if it is not, he may, on his own motion, grant judgment notwithstanding the verdict. (Code Civ. Proc., § 629.) The court, however, cannot grant judgment notwithstanding the verdict merely upon the ground that damages were excessive or inadequate. ▮ That issue must be raised by a motion for new trial (Code Civ. Proc., § 657), and absent exceptional circumstances (see discussion in 5 Witkin, Cal. Procedure (2d ed. 1971) pp. 3621-3622) the trial court cannot grant a new trial on its own motion. Thus, because of the failure of defendants here to move for a new trial, the issue of adequacy of damages was never presented for decision by the trial judge.

The trial court is in a far better position than an appellate court to determine whether a damage award was influenced by "passion or prejudice." (Code Civ. Proc., § 657.) ▮ In reviewing that issue, moreover, the trial court is vested with the power, denied to us, to weigh the evidence and resolve issues of credibility. (See 5 Witkin, Cal. Procedure (2d ed. 1971) p. 3620.) ▮ When defendants first challenge the damage award on appeal, without a motion for a new trial, they unnecessarily burden the appellate courts with issues which can and should be resolved at the trial level.[8]

Since we conclude that defendants cannot contend that the damages awarded are excessive, we need not inquire into the evidence supporting that award. That issue, however, has been fully argued to this court. ▮ In resolving that issue, we bear in mind that an appellate court may reverse an award only " 'When the award as a matter of law appears excessive, or where the recovery is so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice.' " (*Cunningham* v. *Simpson* (1969) 1 Cal.3d 301, 308 [81 Cal.Rptr. 855, 461 P.2d 39], quoting *Rosenberg* v. *J. C. Penney Co.* (1939) 30 Cal.App.2d 609, 628

---

Appeal opinion, and has been briefed and argued to this court. It is therefore a proper issue for resolution by the court. (See *Wong* v. *DiGrazia* (1963) 60 Cal.2d 525, 532, fn. 9 [35 Cal.Rptr. 241, 386 P.2d 817].)

[8]The reasoning stated in this opinion vindicates the application of the rule of *Bate* v. *Jolin* to cases tried by a jury. Since the present case was tried by a jury, we have no occasion to reconsider whether failure to move for a new trial necessarily bars a party from claiming on appeal that damages are excessive or inadequate in a case tried by the court without jury.

[86 P.2d 696].) Since plaintiffs' arguments convince us that the evidence is adequate to sustain the award, we set forth our reasons for that conclusion.

The focus of controversy is the value of the personal property stored in the van, and lost, destroyed, or damaged as a result of the accident. Mrs. Schroeder, the owner of the property, testified that the goods in the van were worth about $20,000, and that she received about $1,000 worth of soggy salvage when Auto Driveaway finally delivered the goods. As a basis for her appraisal, she testified that she had accumulated the goods over a period of seven or eight years by using almost all the money from a $23,000 inheritance. She furnished to defendants, who introduced it into evidence, a six-page itemized list which included furs, cameras, tapestries, groceries, guns, binoculars, boxes of new and used clothing, glassware, silverware, tools, machines, and assorted other items. On direct examination she added a few additional items omitted from the list. Defense counsel cross-examined her for one and a half days and questioned her respecting many of the goods on the van to determine which items were lost or destroyed, which damaged, and the extent of damage.

The itemized list introduced into evidence by defendants, the testimony of Mrs. Schroeder, and the fact that the van contained 97 large cartons plus other items, a load of almost 2 tons, established that the van carried a large amount of valuable property. Mrs. Schroeder, as the owner of this property, estimated that value, at the time the property was placed in defendants' care, at $20,000, and the salvage value at $1,000. Defendants presented no evidence to show the original or salvage value of the goods.

Defendants contend that plaintiffs failed to prove the amount of damages by credible and ponderable evidence. They complain that plaintiffs did not present a complete list of the items on the van, stating their depreciated value when put in defendants' possession, and their salvage value. Mrs. Schroeder testified that she prepared a complete list but that it, along with other personal papers, was lost in the accident. Defendants did not deliver the remaining goods to plaintiffs until seven months after the accident. Plaintiffs' inability at that time to reconstruct perfectly a list of several hundred items is understandable.[9]

The absence of a complete and fully accurate list of damages does not bar plaintiffs' recovery. ■ As was stated in *Martin* v. *Town & Coun-*

---

[9] We do not excuse plaintiffs' failure to prepare an itemized list of the salvaged goods upon their receipt of delivery in Susanville. We observe, however, that although Auto Driveaway did not deliver those goods until after plaintiffs' action was filed, it made no attempt to list or value the salvage. Under those circumstances, we believe the jury could credit Mrs. Schroeder's estimate of the salvage value.

*try Development* (1964) 230 Cal.App.2d 422, 429 [41 Cal.Rptr. 47, 10 A.L.R.3d 1347]: "While it is true that plaintiffs must show with reasonable certainty that they have been damaged because of the wrongful conduct of the defendant, 'once the cause and existence of damages have been so established, recovery will not be denied because the damages are difficult of ascertainment.' (*Stott* v. *Johnston,* 36 Cal.2d 864, 875 [229 P.2d 348, 28 A.L.R.2d 580].) Liability cannot be evaded because damages cannot be measured with exactness."

■ The opinion of an owner of personal property is in itself competent evidence of the value of that property, and sufficient to support a judgment based on that value. (See *Golding* v. *R.K.O. Pictures, Inc.* (1950) 35 Cal.2d 690, 700-701 [221 P.2d 95]; Witkin, Cal. Evidence (2d ed. 1966) § 403 and cases there cited.) "The credit and weight to be given such evidence and its effect . . . is for the trier of fact." (*Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App.3d 844, 853 [88 Cal.Rptr. 39].) Mrs. Schroeder's opinion concerning the value of her property—amply corroborated, uncontradicted by defense testimony, and believed by the jury—is sufficient to support an award for the difference between the value of the goods stored in the van and the salvage value.

■ To the sum of $19,000 for loss or damage to the goods we add the other damages suffered by plaintiff Madeleine Schroeder. Plaintiffs adduced evidence that they purchased the van, totally destroyed in the accident, for $800 and that they had invested approximately $400 in new tires, emergency equipment, and sundry repairs. Plaintiffs also presented expert evidence that Mrs. Schroeder's circulatory problems were exacerbated by her distress over the accident and her frustration with Driveaway's response to her inquiries. She was hospitalized twice for angina and high blood pressure, and incurred medical expenses of $1,214.85.

The foregoing items of damages total $21,414.85. In addition to that figure, Mrs. Schroeder is entitled to compensation for pain, suffering, and emotional distress. Consequently the jury award of $25,000 for compensatory damages falls well within that permitted by the evidence.

Defendants also object to the award of $10,000 for exemplary damages. Mrs. Schroeder's right to recover exemplary damages was explained by the Court of Appeal: "Exemplary damages may not ordinarily be recovered in an action based upon a contractual obligation. If, however, the action is one in tort, exemplary damages may be recovered upon a proper showing of malice, fraud or oppression even though the tort incidentally involves a breach of contract. (*Chelini* v. *Nieri* (1948) 32 Cal.2d 480, 486-487 [196 P.2d 915]; and see, *Wetherbee* v. *United Insurance Co. of*

*America* (1968) 265 Cal.App.2d 921, 928-929 [71 Cal.Rptr. 764], hg. den.) The Schroeders very clearly pleaded and, we hold, proved a cause of action in tort for fraud and deceit; also as to some of their chattels, a cause of action for conversion. The action, to the extent that it may be said to pertain to a contract, is actually for the breach of an obligation imposed by law—in which exemplary damages may also be sought. (*Squire's Dept. Store, Inc.* v. *Dudum* (1953) 115 Cal.App.2d 320, 324 [252 P.2d 418].)"

Defendants contend, however, that since they had no intent to vex, annoy or injure plaintiffs, exemplary damages cannot be awarded. (See *Ebaugh* v. *Rabkin* (1972) 22 Cal.App.3d 891, 894 [99 Cal.Rptr. 706]; *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 526-527 [322 P.2d 933].) We assume defendants felt no personal animus toward plaintiffs. But "intent," in the law of torts, denotes not only those results the actor desires, but also those consequences which he knows are substantially certain to result from his conduct. (Rest. 2d Torts, § 8a; Prosser, Torts (4th ed. 1971) pp. 31-32.)[10] The jury in the present case could reasonably infer that defendants acted in callous disregard of plaintiffs' rights, knowing that their conduct was substantially certain to vex, annoy, and injure plaintiffs. Such behavior justifies the award of punitive damages. As stated in *Toole* v. *Richardson-Merrell Inc.* (1967) 251 Cal. App.2d 689, 713 [60 Cal.Rptr. 398, 29 A.L.R.3d 988]: "malice in fact, sufficient to support an award of punitive damages . . . may be established by a showing that the defendant's wrongful conduct was wilful, intentional, and done in reckless disregard of its possible results." (Accord: *Black* v. *Shearson, Hammill & Co.* (1968) 266 Cal.App.2d 362, 369 [72 Cal.Rptr. 157].)

Defendants also contend that the amount of punitive damages awarded is excessive in relationship to the actual injury suffered by Mrs. Schroeder. For the reasons we discussed earlier in this opinion, defendants' failure to move for a new trial precludes them from contending on appeal that the damage award is excessive. In any event, the principle that an award of punitive damages must bear a reasonable relationship to actual damage (see *Oakes* v. *McCarthy Co.* (1968) 267 Cal.App.2d 231, 263 [73 Cal.Rptr. 127]) finds application only in cases in which the award of punitive damages far exceeds any actual injury. (See, e.g., *Forte* v. *Nolfi* (1972) 25 Cal.App.3d 656 [102 Cal.Rptr. 455] [$20,000 punitive dam-

---

[10]"If the manifest probability of harm is very great, and the harm follows, we say that it is done maliciously or intentionally; if not so great, but still considerable, we say that the harm is done negligently; if there is no apparent danger, we call it mischance." (Holmes, *Privilege, Malice and Intent* (1894) 8 Harv.L.Rev. 1.)

ages—$2,800 actual damages].) The award of punitive damages in the present case, a sum less than one-half the amount of actual damage, cannot be held excessive. (See *Ferraro* v. *Pacific Fin. Corp.* (1970) 8 Cal. App.3d 339, 353 [87 Cal.Rptr. 226] and cases there cited.)

For the foregoing reasons the judgment as to both liability and damages is affirmed.

Wright, C. J., McComb, J., Mosk, J., and Burke, J., concurred.