Filed 7/25/13  Bergeron v. Payne CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MERLIN LEE BERGERON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CLIFTON PAYNE, SR.,<br><br>    Defendant and Respondent. | D060553<br><br><br><br>(Super. Ct. No. 37-2010-00090076-CU-BT-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Jay M. Bloom, Judge.  Affirmed.

Archer Norris, W. Eric Blumhardt and Pamela G. Lacey for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller and Matthew B. Stucky; Charles Anthony Williams for Defendant and Respondent.

Plaintiff Merlin Lee Bergeron operated a restaurant on property that he rented from defendant Clifton Payne, Sr., under a written lease agreement.  Bergeron filed the instant action against Payne for breach of contract and intentional interference with contractual relationship based on Payne's alleged unreasonable refusal to consent to Bergeron's assignment of the lease

to a third party who entered into a contract with Bergeron to purchase the restaurant. After entering judgment on a jury verdict awarding Bergeron compensatory and punitive damages, the court granted Payne's motion for new trial on all issues. Bergeron appeals the order granting a new trial, contending that the court abused its discretion by not limiting the new trial to the issue of damages. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2005, Bergeron and Payne entered into a written commercial lease agreement under which Bergeron leased business premises in San Diego from Payne for a term of five years with options to extend the lease for three additional five-year periods. Monthly rent was $2,500 for the initial lease term and $2,750, plus a cost of living increase, for the extended lease term. The lease required Payne's express written consent for any assignment or subletting of the lease. The lease also required Payne's prior consent for any alterations or improvements to the premises.

Bergeron paid between $164,000 and $200,000 in construction costs to convert the leased premises to a restaurant. He also spent about $52,000 for restaurant fixtures, $11,000 for a point of sale system, and $12,500 for a liquor license. Approximately 18 months after signing the lease, Bergeron opened a restaurant named Lucky Bucks on the premises.

Bergeron began to market the restaurant in September 2008. In the spring of 2009, he accepted an offer from Naomi Evans to purchase the restaurant, including Bergeron's leasehold interest, plus "inventory of stock in trade" for $163,000. Evans and her husband Israel deposited the full purchase price into escrow, paid $5,000 for transfer of the restaurant's conditional liquor license, and began operating the restaurant. They spent about $50,000

2

renovating the restaurant after they took it over. In the summer of 2009, Bergeron decided to move to Spain after he was diagnosed with a brain aneurysm and his doctor instructed him to sell his business and relieve all stress in his life. In January 2010, Bergeron's friend Scott Rhude began to act on Bergeron's behalf under a power of attorney to complete the sale of the business.

The closing of escrow for the restaurant sale was expressly contingent on Evans's obtaining an assignment of the lease. Although Bergeron and Evans executed an assignment and assumption of lease form on May 11, 2009, Payne did not fill out or sign the section of the form that called for his written consent to the assignment. Beginning in June 2009, the Evanses delivered monthly rent checks to Payne. However, on the advice of his attorney, Payne did not cash the rent checks and ultimately returned them because they were accompanied by written statements to the effect that cashing them would constitute acceptance of Bergeron's assignment of the lease to Evans. Payne was reluctant to consent to the assignment because he had concerns about Naomi Evans's credit score. He requested that Israel Evans be a cotenant on the lease and that the Evanses submit a "proper lease application" showing their assets and cash position.

A real estate agent involved in the sale of the restaurant testified that Payne said he wanted to break the existing lease so he could charge $1,100 more in rent to the new tenants. The Evanses offered Payne an additional $500 per month and were willing to accept a five-year lease term with one five-year option, but Payne did not agree to those terms. He requested that $53,000 be put into escrow to cover the cost of returning the restaurant premises to its prior state at the end of the lease. The parties and agents involved in the sale ultimately

offered to deposit $72,000 in escrow to meet Payne's concerns, but he still refused to consent to the assignment. The Evanses cancelled escrow when their temporary liquor license expired. Payne took possession of the premises after obtaining a judgment in the amount of $27,500 against Bergeron in an unlawful detainer action for nonpayment of rent.

Bergeron filed a complaint against Payne alleging causes of action for breach of contract, intentional interference with contractual relationship, and declaratory relief. In his cause of action for breach of contract, Bergeron alleged that Payne breached the lease by unreasonably withholding his consent to Bergeron's assignment of the lease to Evans. In his cause of action for intentional interference with contractual relationship, Bergeron alleged that Payne's unreasonable refusal to consent to the assignment disrupted the contractual relationship between Bergeron and Evans. He further alleged he was entitled to an award of punitive damages because Payne's conduct was "willful, wanton and egregious, and done with malice to spite [Bergeron] . . . ." Payne filed a cross-complaint against Bergeron, alleging Bergeron breached the lease agreement by failing to timely pay rent and failing to pay late fees for late rental payments; failing to pay a security deposit; failing to timely pay real estate taxes for the premises; making or permitting alterations and improvements to the premises without Payne's prior written consent; and failing to maintain insurance on the building and other improvements on the premises.

The case was tried before a jury. In closing argument, Bergeron's counsel told the jury that if it found Payne breached the lease contract, it could award Bergeron "various contract damages aside from the $163,000 that was the sale price of the restaurant." Counsel stated the jury could "also find the unlawful detainer action filed against [Bergeron] was without merit

4

[b]ecause [Payne] himself rejected monthly, timely rent checks."  Accordingly, counsel asked the jury to award $42,500 for the unlawful detainer action, consisting of the judgment of $27,500 and attorney fees of $15,000 that Bergeron incurred in defending the action.  Counsel also asked the jury to award Bergeron construction costs of $146,000, representing the difference between the cost of the restaurant "build-out" ($309,000) and the $163,000 sales price of the restaurant; $25,000 for Rhude's "expenses and advances on behalf of Mr. Bergeron and his time[;]" and $11,000 in additional attorney fees.  Adding these items of damages for the jury, counsel stated, "So that's approximately $388,000."

The jury returned a special verdict in Bergeron's favor, finding Payne breached the lease contract and "intentionally interfered with Lee Bergeron's escrow with Naomi Evans."  The jury found that Bergeron's damages were $388,000, the amount that Bergeron's counsel requested in closing argument.  The jury further found that Payne acted with "malice or oppression."  In a second phase of the trial to determine the amount of punitive damages, the jury awarded Bergeron punitive damages against Payne in the amount of $300,014.59.  The number 1459 is the street address number of the restaurant.

Payne moved for a new trial and judgment notwithstanding the verdict (JNOV).  In both motions, Payne argued that there was no substantial evidence to support the verdict that he tortuously interfered with Bergeron's contract with Evans because his actions, at most, amounted to a breach of contract and not a tort.  He further argued there was insufficient evidence that he acted with malice to support an award of punitive damages.  In his motion for new trial, Payne additionally contended the jury's award of compensatory damages was excessive and not supported by substantial evidence.  He argued that Bergeron, at most, was

5

entitled to recover the sales price of the restaurant minus the value of the restaurant equipment that his agent Rhude removed from the premises and the value of the liquor license he retained. Payne asked the trial court to "grant a new trial to correct the jury's verdict that goes beyond the scope of the evidence adduced at trial." Alternatively, Payne suggested that the court "may grant a new trial subject to the condition that the motion will be denied if Bergeron agrees to a substantial reduction in damages in an amount [the] court deems fair and reasonable based on the evidence at trial."

The court issued a tentative ruling denying Payne's motion for JNOV and granting his motion for new trial "on the complaint." Following oral argument on the motions, the court issued an order granting Bergeron's request for leave to file a supplemental letter brief. In his supplemental brief, Bergeron defended the jury's economic damages award of $388,000 and argued that if the court was still convinced that certain items of damages included in the award were unjustified, the court should simply reduce the award. Bergeron further argued that if the court was inclined to grant a new trial, the trial should be limited to the issue of economic damages for breach of contract.

The court issued a final order denying Payne's motion for JNOV and granting his motion for new trial on the entire complaint. The court found that "the amount of compensatory damages awarded [Bergeron] by the jury is not supported by the evidence." The court stated: "Based on the jury's finding that [Payne] breached the lease agreement by refusing to permit assignment of [Bergeron's] lease to the Evans[es] and thereby intentionally interfering with the sale of [Bergeron's] interest to the Evans[es], [Bergeron] lost the opportunity to sell his business interest. The only damages supported by the evidence

6

presented would be the sale[s] price. The evidence indicates that the escrow agreement reflected a sales price of $165,000. . . . [¶] On behalf of [Bergeron], evidence of 'damages' beyond the sale[s] price was introduced. For instance, [Bergeron's] counsel introduced evidence of the $35,000 in attorney's fees incurred at the time of trial in this action . . . , a $25,000 unlawful detainer action judgment against [Bergeron] . . . , the $20,000 in attorney's fees [Bergeron] incurred in the unlawful detainer action . . . , as well as nearly $60,000 invested by the Evans[es] beyond the sales price. [Bergeron] also testified regarding permit fees he paid, as well as costs of the improvements he made to the property over the life of the lease. . . . [Bergeron] also claimed damages for a person who was not even a party to the case (Mr. Rhude)."

Noting that Bergeron's counsel suggested to the jury that an appropriate award of compensatory damages would be $388,000, the court stated: "The reasonable inference is that the jury awarded Bergeron $388,000 in compensatory damages based on [counsel's] instruction. [¶] Not only do the amounts suggested by [Bergeron's] counsel not flow, legally speaking, from the breach of contract, they do not fall within the permissible damages [for contract interference], as they cannot be considered 'the pecuniary loss of the benefits of the contract or prospective relation' or 'consequential losses for which the interference is a legal cause.' Thus, to the extent the jury relied on [counsel's] advice in closing and the testimony on those points, any award of damages beyond the sale[s] price of $165,000 is unsupported by the evidence and excessive." Later in its ruling the court added that "[Bergeron's] counsel expressly told the jury to consider the improper amounts discussed above in order [to] reach the $388,000 number. Under these circumstances, the conclusion is unmistakable that the jury

7

reached that number by relying on the improper argument of [Bergeron's] counsel concerning damages to which [Bergeron] was not entitled."

Regarding the unlawful detainer judgment against Bergeron, the court stated: "For the jury to award [that amount] to [Bergeron], the jury would have had to overrule the judge's ruling in the [unlawful detainer] case and conclude [Bergeron] was the prevailing party in that case. However, the jury never heard all the facts of [that] case and never made a finding on the verdict form that [Bergeron] should be a prevailing party in the unrelated case."

The court concluded: "[B]ecause the jury's award of $388,000 was excessive and based on improper matters, a new trial must be granted on the complaint. [¶] While partial new trial is appropriate when the issues of liability and damages are severable, the Court grants an entire new trial based on its finding that the issues of liability and damages are substantially interwoven. Moreover, the presentation of numerous claims of damages that were not related to the case may have unduly inflamed the jury and affected its liability determination." Regarding Bergeron's request that the court reduce the damages instead of granting a new trial, the court stated that "while the court is normally amenable to this process, it cannot be done here. Punitive damages must bear some relationship to the actual damages. It would be impossible to know what the jury might have awarded in punitive damages[] if they had awarded a substantially lesser amount of compensatory damages."

## DISCUSSION

Bergeron contends that the court abused its discretion by ordering a new trial on all issues instead of a new trial on the issue of damages only.

8

"The power of a trial court to grant a new trial as to some issues, while refusing it as to others, is . . . well established. [Citations.] 'The decision on limiting a new trial to the issue of damages rests in the first instance in the sound discretion of the trial judge. A new trial limited to the damage issue may be ordered where it can be reasonably said that the liability issue has been determined by the jury. An abuse of discretion must be shown `before a reviewing court will reverse the trial judge's decision.' [Citations.] [¶] [ ] [However, *even when it appears that the issue of liability was correctly determined, a new trial limited to damages 'should be granted . . . only if it is clear that no injustice will result.* [Citations.] . . . [I]t has been held that a request for such a trial should be considered with the utmost caution [citations] and that *any doubts should be resolved in favor of granting a complete new trial*.' [Citation.] In short, 'When a limited retrial might be prejudicial to either party, the failure to grant a new trial on all of the issues is an abuse of discretion. [Citation.].]' " (*Liodas v. Sahadi* (1977) 19 Cal.3d 278, 285-286, italics added.)[1]

"Three factors of importance in assessing the choice of limited new trial as opposed to entire new trial are: (1) whether liability was clearly established at the first trial[;] (2) whether the evidence concerning damages was insufficient or entirely nonexistent; and (3) whether prejudice to a party would result as the result of the choice of one disposition over the other." (*Tan Jay Internat., Ltd. v. Canadian Indemnity Co.* (1988) 198 Cal.App.3d 695, 705.) A new trial on all issues is appropriate if there are circumstances that indicate the verdict was the

---

[1]    As former Presiding Justice Brown of this court observed, "The power of the trial court is singularly at its greatest in deciding whether to grant a new trial, leaving the appellate court virtually powerless to reinstate a most reasonable jury verdict." (*Candido v. Huitt* (1984) 151 Cal.App.3d 918, 924 (conc. opn. of Brown, J.).)

result of prejudice and the question of liability is close. (*Hamasaki v. Flotho* (1952) 39 Cal.2d 602, 604-605.)

In the present case, we cannot conclude the trial court abused its discretion in ordering a new trial on all issues. The improper items of damages that the jury assessed at counsel's urging resulted in an excessive compensatory damages award, which itself might have affected the jury's liability findings. (See *Sabella v. Southern Pacific Co.* (1969) 70 Cal.2d 311, 316, fn. 2 [excessive damages resulting from prejudice or passion may affect the issue of liability and cannot be cured by a remittitur].) It was not unreasonable for the court to conclude that the issues of liability and damages were "substantially interwoven" and that "the presentation of numerous claims of damages that were not related to the case may have unduly inflamed the jury and affected its liability determination." For example, the court reasonably could have been concerned that the jury based its liability determination in part on Payne's conduct that caused Rhude to incur the $25,000 in "expenses and advances." Following Bergeron's counsel's cue, the jury awarded those expenses and advances to *Bergeron* as damages. The court concluded those damages were improper because they were losses suffered by *Rhude* rather than Bergeron. The court could reasonably be concerned that inflating the damages award with items that are not allowed by law may have unduly inflamed the jury and influenced its liability determination. "The trial court is in a far better position than an appellate court to determine whether a damage award was influenced by 'passion or prejudice.' [Citation.] In reviewing that issue, . . . the trial court is vested with the power, denied to us, to weigh the evidence and resolve issues of credibility." (*Schroeder v. Auto Driveaway Co.* (1974) 11 Cal.3d 908, 919.) Because the trial court was reasonably concerned that the

10

"improper claims of damages" may have affected the jury's liability determination, the court did not abuse its discretion in concluding that neither a new trial limited to the issue of damages nor a remittitur was appropriate.

Further, notwithstanding the jury's liability findings and obvious dislike of Payne, the court could reasonably view the question of Payne's liability for breach of contract as close in light of the unlawful detainer judgment *against Bergeron* for nonpayment of rent under the lease Payne was charged with breaching. As noted, if the question of liability is close, it is an abuse of discretion to grant a new trial limited to the issue of damages. (*Hamasaki v. Flotho, supra,* 39 Cal.2d at pp. 604-605.)

Finally, it was not an abuse of discretion to order a new trial on the issue of punitive damages because the amount of compensatory damages awarded is a factor relevant to the assessment of punitive damages. (*Lane v. Hughes Aircraft Co*. (2000) 22 Cal.4th 405, 417.) Accordingly, the court properly ruled that a remittitur or limited new trial was not appropriate because, in the court's words, "[p]unitive damages must bear some relationship to the actual damages[,] and "[i]t would be impossible to know what the jury might have awarded in punitive damages[] if they had awarded a substantially lesser amount of compensatory damages."

DISPOSITION

The order granting a new trial on all issues is affirmed.  Payne is awarded his costs on appeal.


BENKE, Acting P. J.

WE CONCUR:


McINTYRE, J.


O'ROURKE, J.