Filed 9/13/24  Castro-Gonzalez v. Cazarez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA


| | |
|---|---|
| MARTIN CASTRO-GONZALEZ, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FELIPA CAZAREZ, <br><br> Defendant and Appellant. | D081659 <br><br><br> (Super. Ct. No. 37-2020-00017427-CU-PA-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Manning & Kass Ellrod, Ramirez, Trester, John D. Marino, Emily I. Ellse and Steven J. Renick for Defendant and Appellant.

Dolan Law Firm, Christopher B. Dolan and Allison L. Stone; The Arkin Law Firm and Sharon J. Arkin for Plaintiff and Respondent.

MEMORANDUM OPINION

Felipa Cazarez appeals a $100,000 jury award of punitive damages arising from a personal injury action brought by Martin Castro-Gonzalez. Cazarez claims the award is excessive in light of evidence regarding her ability to pay it.  Because she failed to move for a new trial on this basis

below, she waived this claim. We resolve this case by memorandum opinion (Cal. Stds. Jud. Admin., § 8.1; *People v. Garcia* (2002) 97 Cal.App.4th 847, 851–854), and affirm.

## I.

In 2019, Castro-Gonzalez was standing next to his car when Cazarez crashed her car into it. The impact caused Castro-Gonzalez's car to rotate and strike him, causing serious injuries and permanent paralysis. Cazarez was driving while intoxicated.

In a criminal proceeding, Cazarez pled guilty to felony driving under the influence and was sentenced to six years in prison. She was released in June 2022, after serving approximately two and a half years.

While Cazarez was in prison, Castro-Gonzalez brought a negligence suit against her seeking compensatory and punitive damages.

The only evidence regarding Cazarez's financial condition came through her oral testimony at trial, in December 2022. During Castro-Gonzalez's case-in-chief under Evidence Code section 776, Cazarez testified she had been employed at a hospital for 19 years before the incident. While working at the hospital, Cazarez was a member of a union, had a pension, and earned $24 or $25 per hour. She did not know how much money, if any, she might receive in the future from the pension.

At the time of the trial, Cazarez was working 40 hours per week as a pharmacy cashier earning $17.50 per hour. She worked overtime approximately once a month. She had no savings or property of value, nor did she receive or expect to receive money from any other source. Cazarez claimed she could not secure a second job because she needed to care for her children.

As to her expenses, Cazarez testified she was living paycheck to paycheck and spent her income on a monthly bus pass, phone bill, food, clothes, shoes, and other items for her two children, who were 12 and 15 years old at the time. She and her children lived in her mother's house. She had not paid rent since being released from prison six months prior, but intended to resume $1,000 monthly rent payments.

The jury awarded Castro-Gonzalez $16,602,050 in compensatory damages and $100,000 in punitive damages. Cazarez filed a timely appeal from the judgment, challenging only the punitive damages award.

## II.

Cazarez's briefing on appeal conflates the separate questions of: (1) whether there is meaningful evidence of her financial condition in the record, and (2) whether the punitive damage award is excessive. At oral argument, Cazarez's counsel conceded there was sufficient evidence of her financial condition but argued that evidence showed she had no ability to pay any punitive damages, much less the amount the jury awarded. Her counsel clarified that Cazarez's only position on appeal was that the award was *excessive* in light of the evidence regarding her ability to pay. Because Cazarez did not move for a new trial on this basis, which her counsel also conceded, she cannot challenge the amount of the award on appeal.

The proper level of punitive damages is an amount not so low that the defendant can absorb it with little or no discomfort, nor so high that it destroys, annihilates, or cripples the defendant. (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 621–622 (*Rufo*).) "'The point that damages are excessive cannot be raised for the first time on appeal, but must be presented to the lower court on the motion for new trial.'" (*Schroeder v. Auto Driveaway Co.* (1974) 11 Cal.3d 908, 918 (*Schroeder*).) Failure to move for a new trial on the

3

ground of excessive damages precludes a challenge to the amount on appeal if the challenge turns on the credibility of witnesses, conflicting evidence, or other factual questions. The power to weigh the evidence and resolve issues of credibility is vested in the trial court, not the reviewing court. Thus, trial courts are in a better position than appellate courts to resolve disputes over the proper amount of damages based on the evidence presented at trial. When a defendant first challenges a damages award on appeal, without a motion for new trial, they unnecessarily burden the appellate courts with issues that can and should be resolved at the trial level. (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 759.)

Whether the punitive damages awarded against Cazarez was excessive based on her ability to pay it turned on the resolution of conflicting evidence and her credibility. On the one hand, Cazarez testified she lived paycheck to paycheck, and argued she thus had no ability to pay any amount of punitive damages. On the other hand, Cazarez testified she earned a $17.50 hourly wage for an approximate income of $3,000 per month. Although she did not provide specific figures for her expenses, the jury could draw reasonable inferences based on her explanation of her obligations: a monthly bus pass, a phone bill, food, clothes, shoes, and other items for her two children. (*Ruth v. Lytton Sav. & Loan Asso.* (1968) 266 Cal.App.2d 831, 844.) Because Cazarez did not own a car, house, or any property of value, the jury could also reasonably infer she did not have a mortgage, loans, or other significant liabilities. (*Ibid.*) She also testified that she intended to resume $1,000 monthly rent payments, although she had not paid rent since being released from prison six months prior. The jury could have discredited her claim that she would eventually pay rent. Ultimately, Cazarez's ability to pay the punitive damages award based on the evidence of her financial condition

4

presented a question of fact to be resolved by the trial court in the first instance on a motion for new trial. An appellate court ordinarily defers to the trial court's denial of such motion because of the trial judge's greater familiarity with the case. (*Rufo,* 86 Cal.App.4th at p. 615.) Cazarez's failure to move for a new trial precludes her from arguing on appeal that the punitive damages award was excessive. Her counsel claimed at oral argument that such motion was unnecessary to argue that an award of punitive damages cannot be sustained on appeal unless the record contains meaningful evidence of the defendant's financial condition. (*Adams v. Murakami* (1991) 54 Cal.3d 105, 109.) Cazarez's argument fails because her counsel conceded at oral argument the record contains substantial evidence of Cazarez's financial condition, counsel further confirmed the only issue on appeal was whether the award was *excessive* in light of the evidence regarding her ability to pay, yet Cazarez failed to move for a new trial. (*Schroeder,* 11 Cal.3d at p. 918.)

### III.

The judgment is affirmed. Castro-Gonzalez is to recover his costs on appeal.

CASTILLO, J.

I CONCUR:

KELETY, J.

O'Rourke, Acting P. J., Dissenting

I respectfully dissent. I have no quarrel with well-settled authority requiring a party to move for a new trial on the ground of excessive damages before raising it on appeal. However, this doctrine has no application to the case at hand: "Failure to move for a new trial on the ground of excessive damages precludes a challenge to the amount on appeal *if the challenge turns on the credibility of witnesses, conflicting evidence, or other factual questions*." (Maj. opn., *ante*, at p. 4, italics added.)

The key inquiry is Felipa Cazarez's net worth or ability to pay, with "evidence of [her] actual wealth" including not just earnings but liabilities. (*Doe v. Lee* (2022) 79 Cal.App.5th 612, 621.) The record in this case is devoid of evidence Cazarez is capable of paying punitive damages in any amount. She has no assets and earns $17.50 an hour. There are no conflicts in this evidence. In seeking punitive damages, it is Martin Castro-Gonzalez's burden of proof to establish Cazarez's financial condition. (*Adams v. Murakami* (1991) 54 Cal.3d 105, 109.) The majority does not explain why there is a conflict in Cazarez's testimony that she spends all her wages to provide basic necessities and her testimony that she earns $3,000 per month when Castro-Gonzalez failed to produce any evidence to the contrary.

Cazarez's credibility is the only material issue that could have been decided by the jury. But irrespective of its determination, the outcome is the same—the punitive damages are excessive. If believed, she has no assets and her wages are wholly inadequate to pay the award. If not believed, there is no contrary evidence of her financial condition. A jury decision to disbelieve Cazarez does not cure Castro-Gonzalez's failure to meet his burden of proof or create a conflict in the evidence; instead, it creates an evidentiary void.

In *Doe v. Lee*, the court held the admitted evidence did not support a $230,400 punitive damages award: "The record does not show that appellant has any other assets [than a one-sixth interest in an LLC worth $230,400] to his name. It does not contain any record or analysis of his liabilities or expenses—though we know he owes over $800,000 in compensatory damages. It does not show that he has a source of income that would enable him to pay off the compensatory damages award, cover his necessary expenses, and pay the punitive damages award without rendering him destitute. If an interest in the property is appellant's primary asset and represents roughly all of his wealth or potential wealth—and we have no reason to conclude otherwise, as respondents have failed to meet their burden to demonstrate otherwise—this award would take up all of it, and prior decisions suggest an award taking up that magnitude of a person's assets is excessive." (*Doe v. Lee*, *supra*, 79 Cal.App.5th at pp. 621-622.) A punitive damages award " 'can be so disproportionate to the defendant's ability to pay that the award is excessive *for that reason alone.*' " (*Id.* at p. 619, quoting *Adams v. Murakami*, *supra*, 54 Cal.3d at p. 111.) The "purpose of punitive damages is not served by financially destroying a defendant. The purpose is to deter, not to destroy." (*Adams v. Murakami*, at p. 112; see also *Doe v. Lee*, at p. 619.)

Under these principles, Cazarez is entitled to support herself and her children. But I additionally invite the majority to join me in taking judicial notice that the entirety of Cazarez's wages necessary to do so are exempt from garnishment to satisfy a judgment pursuant to Code of Civil Procedure sections 706.050 through 706.051 and California Courts "Guide to earnings withholding order for employers" (<https://selfhelp.court.ca.gov/guide-earnings-whithholding-orders-emloyers>).

Because of the particular circumstances of this case, this court is as capable as the trial court to decide whether the punitive damages award is excessive.  It is as a matter of law.  The judgment awarding punitive damages should be reversed.

O'ROURKE, Acting P. J.