[Civ. No. 24716.   Second Dist., Div. One.   Sept. 14, 1960.]

MARY D. DUNLAP, Respondent, v. RAY BELLAH et al., Defendants; RUTHERFORD B. HAYS et al., Appellants.

William T. Selby and Ben K. Ashby for Appellants.

Ruffner & Henson for Respondent.

LILLIE, J.—The issue for determination in this quiet title action is whether the defendants Rutherford B. and Goldie E. Hays (the sole defendants appearing) divested themselves of any interest in the subject real property by virtue of certain negotiations with the plaintiff which, the trial court found, constituted full satisfaction of their claim under a second deed of trust.

Certain uncontradicted background facts are set forth in the pretrial order. The property, situated in Moorpark, is improved with a store building where, in November of 1949, the defendants Bellah were conducting a grocery business. The Bellahs owned both the business and the building subject to the following liens: a first trust deed on the building held

by Riley Spencer and Dora Spencer, and a second trust deed in favor of defendants Hays; the latter also held a lien against the equipment in the form of a chattel mortgage. The Bellahs decided to sell out and thereafter entered into an agreement with the plaintiff through D. R. Jennings, her brother, whereby she would take over the business and pay off the first deed of trust; the beneficial interests of the defendants Hays were also assumed. Plaintiff entered into operation of the business and has been in peaceful possession ever since. In 1957, in response to her inquiry, plaintiff was informed by the Title Insurance and Trust Company that she needed a deed from the Bellahs and a reconveyance on the Hays' deed of trust to clear her title; this action was then commenced (in the usual quiet title form) and the Bellahs subsequently delivered a deed to plaintiff. The defendants Hays answered; in addition to a general denial, they alleged that they were the holders of the Bellahs' promissory note in the sum of $6,735.33, dated July 1, 1949, secured by a deed of trust; that except for seven monthly payments of $100 each and a single payment of $4,600, no part of said promissory note had been paid, and that there was now due and remaining unpaid thereon (including interest) a total sum of $2,533.74.[1]

Upon the trial, and with reference to the affirmative defense just mentioned, it appears that one month or so after plaintiff's purchase of the property (and while the business was being managed by Mr. Jennings), E. E. Hays, a brother of the defendant Rutherford B. Hays, came into the store and Jennings asked him whether his brother would take $5,000 in settlement of the obligation outstanding; Hays indicated to Jennings that his brother would prefer to have the monthly $100 installment payments called for by the promissory note. Subsequently, E. E. Hays again came into the store; he stated that he had heard from his brother and that if $5,000 were paid by a date specified by E. E. Hays, that "he would settle the account"; he could not recall the exact date mentioned by defendant's brother. Jennings indicated that the proposal would be considered, although he was not then prepared to pay the sum mentioned within the time stated. A few days later Jennings received a letter from defendant Hays mailed

---

[1]No mention is made in the Hays pleading of the chattel mortgage executed by the Bellahs which recites that "it is made as security for the payment to said mortgagees of the sum of $6,735.33 as evidenced by their promissory note in this amount, dated July 1, 1949."

from St. Louis, Missouri. This letter has been lost; Jennings testified that in substance the letter stated that Hays was going into business, could use the money and would accept "the settlement of $5,000."

On March 17, 1950, Jennings wrote the following letter to Hays:

"Mr. R. B. Hays:

Dear Sir: In answer to your letter regarding fixtures. Will say I can raise $4,600.00 at this time which is more than fixtures are worth as they haven't been taken care of but I will pay that much for them so if Intreacted (*sic*) let me know and I will mail you a Check back by return mail.

Yours Respt.

D. R. Jennings."

To this letter Hays replied as follows:

"Mr. D. R. Jennings
Moorepark, California

Dear Sir:

I have your letter in regards to the fixtures and will say that I am accepting your offier (*sic*) of $4600.00, for them, providing that you send me your check at once, as the deal I am on will not wait and in order to take advantage of it I must have the money now.

Very truly yours,

Rutherford B. Hays"

On March 22, 1950, Jennings wrote to Hays:

"Moorpark, Calif. 3-22-50.

Dear Mr. Hays: Enclosed find check for $4,600.00 in full payment for fixtures located in the Store Building at 104 Moorpark Blvd., Moorpark, Calif. I am not sending Cashiers Check as I do my business at Ventura and as I only keep one Help a meat cutter and it would be impossible to get over to Ventura at once and further more I am Transferring Funds from Los Angeles to Ventura to take care of this Check which should reach there not later than Saturday of this week. Also I might state that you and your Bank there have had no Trouble with any of the checks that I have sent you. I Shall expect in the near future a clear Bill of Sale made to me. covering these fixtures. As I understood Mrs. Spencer to say they had a lean (*sic*) on all these things but Could be mistakin (*sic*) as I never pay much attention to these things I

hear. I am doing a nice cash business running a little better than $200 per day. And I am getting the fixtures put in shape as they were not taken Care of and I will be out around $200 when I get them in shape.

Yours Respt.

D. R. Jennings.''

A check for $4,600 was enclosed with this letter; it was cashed by the defendants and honored by the Ventura bank.

No further payments were made by plaintiff on the promissory note, nor were there any other written communications between the parties. About July or August of 1952 or 1953, according to the uncontradicted testimony of D. R. Jennings, the wife of defendant Hays came to the grocery store, identified herself and spoke to him; she asserted no claim against the real property, nor indicated that the $100 a month payments should be resumed.

At the end of 1954, approximately four years and five months after the check for $4,600 was cashed by the defendants, Hays wrote a letter to Burton L. Rogers, a Ventura attorney, as follows:

''Lawton, Oklahoma

December 20, 1954.

Dear Mr. Rogers:

''In June 1949, you handled a deal for me in which I sold a grocery store and residence in Moorpark, California, to a Mr. Ray Bellah, I refer you to your letter of June 21, 1949, for details.

''Mr. Bellah paid cash in the amount of $7,500 and also gave a promissory note to cover the balance of purchase price amounting to $6,735.33. The note was secured by a second deed of trust and also a chattel mortgage on fixtures. It was to be paid off in monthly payments of $100 per month, plus interest at 5% per annum.

''Mr. Bellah kept the property only a short time and then sold it to a Mr. D. R. Jennings, who assumed the second deed of trust and chattel mortgage. After seven monthly payments had been made, Mr. Jennings wrote to me on March 3, 1950, and said he would give me $4,600 for the fixtures. I accepted his offer, and gave him a bill of sale for fixtures which I had purchased after buying the property from Mr. Spencer. The original fixtures, on which Mr. Spencer carried a lien, were not included in this bill of sale. Now after ap-

pling (*sic*) the $4600, plus senev (*sic*) monthly $100 payments, against the balance, it left a balance of $1,235.33, plus interest. By the monthly schedule as originally set up, by this time, there should have been paid $6,300, whereas there as (*sic*) actually only been paid $5,300 leaving $1,000 past due to date, plus interest.

"I have never signed a release on the second deed of trust and would like to know just how I stand in this matter and what I can do towards collecting the balance due. Now I do not wish to a hardship on anyone, but do feel that I want what is due me. It might be that Mr. Jennings had the impression that he was paying of (*sic*) the entire balance, but his letter made no reference except to the purchase of fixtures and neither did my letter of acceptance of his offer.

"Now Mr. Rogers, *before you contact* any of the other interested parties, I would like to have a letter from you as to just what you think I can do in this matter and as to how to proceed to do it.

"Thanking you very much and hoping to hear from you soon, I am,

Sincerely yours,

R. B. Hays"

Mr. Rogers replied to said letter:

"January 31, 1955

Mr. R. B. Hays
Hotel Geronimo
1401 Cache Road
Lawton, Oklahoma

Dear Mr. Hays:

"Replying to your letter concerning the balance you claim to be due from Jennings to you, we advise as follows:

"It would appear that after Jennings paid you the $4,600.00 in March 1950 and since then has made no other $100.00 monthly payments on account of the note, Mr. Jennings must have believed that this offer to pay you $4,600.00 was, in fact, an offer to pay that amount in full satisfaction of then balance due on the promissory note which would have been approximately $5,838.00.

"Of course, you still have of record an unsatisfied deed of trust against this property which will some day have to be satisfied before Jennings can get clear title thereto.

"It is our opinion that Mr. Jennings should be contacted with reference to this matter and ascertain his ideas thereon.

We assume that Jennings is still making payments on the Spencer note.

"In fairness to Mr. Jennings and also to Mr. Bellah, we believe that the attitude of Mr. Jennings should be ascertained so as to permit him to get title to his real estate straightened out since there are two outstanding deeds of trust of this property to two different individuals.

"If you will authorize us we will contact Jennings with reference to this matter.

"We handled the contracts between Bellah and Jennings and under the terms of which Mr. Jennings was obligated to pay both your note and the Spencer note and Mr. Bellah should be advised if you are claiming the original note from Bellah to you has not been paid in full.

Very truly yours,<br>
Rogers & Rogers<br>
By Burton L. Rogers"

Rogers, as to whom the attorney-client privilege had been concededly waived, testified that he never heard further from defendant. Plaintiff, Jennings and Mrs. Bellah all stated that at no time after payment of the $4,600 had they received any demand from the defendants for additional payments or any complaint that they were delinquent on the note.

As mentioned at the outset, the fundamental issue is whether the appellants retain an interest in the property as beneficiaries under the deed of trust; specifically, whether the evidence supports the finding that respondent is the fee owner of the property by virtue of negotiations which are said by respondent to constitute an accord and satisfaction. ■■ The question, whether an agreement amounts to an accord and satisfaction, is one of intention of the parties and is therefore a question of fact. (*D. E. Sanford Co.* v. *Cory,* 85 Cal.App.2d 724, 730 [194 P.2d 127].) ■ As stated by the court in *Kinkle* v. *Fruit Growers Supply Co.,* 63 Cal.App.2d 102, 112 [146 P.2d 8] : "The question of the existence of an accord and satisfaction depends on the mutual intention of the respective parties, and unless there is a lack of evidence to support the finding of the jury or the decision of the trial court in that regard, their determination of that issue will not be disturbed on appeal."

■ The elements of an accord are: (1) a proper subject matter; (2) competent parties; (3) consent, or meeting of the minds of the parties, and (4) consideration. (*Kelly* v.

*David D. Bohannon Organization,* 119 Cal.App.2d 787, 792 [260 P.2d 646].) In the instant case, it is not disputed that there were competent parties, a proper subject matter and sufficient consideration.[2]

Appellants argue, however, that there was no assent or meeting of the minds and point to the correspondence, hereinbefore set forth, which assertedly indicates that respondent was buying only the fixtures and had no intention of satisfying the total indebtedness reflected by the promissory note and the deed of trust. Reference is made, in that respect, to the Jennings letter of March 17, 1950, wherein the writer states that he "can raise $4,600.00 at this time, which is more than the fixtures are worth." Appellants' reply thereto "in regards to the fixtures" and the acceptance of "your offer of $4,600.00 for them" and finally the Jennings letter of March 22, 1950, enclosing "check for $4,600.00 in full payment for fixtures located in the store building at 104 Moorpark Blvd., Moorpark, California." ▆ Cited for the contention made is the pronouncement in *Grayhill Drilling Co.* v. *Superior Oil Co.,* 39 Cal.2d 751, 754 [249 P.2d 21], that "the debtor must make it clear that acceptance of what he tenders is subject to the condition that it shall be in full satisfaction." ▆ However, it is also well established that the creditor if he wishes to imply the same should with reasonable diligence notify the debtor that the payment is not considered in full satisfaction (*Berger* v. *Lane,* 190 Cal. 443, 452 [213 P. 45]), which principle is a part of our statutory law: "The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards." (Code Civ. Proc., § 2076.) See *Conde* v. *Dreisam Gold Min. Co.,* 3 Cal. App. 583, 589 [86 P. 825].

Wholly aside from the well-known rule of waiver—here, of course, we have an aggravated situation lasting considerably more than eight years—the trial court had the right to draw legitimate and reasonable inferences negativing the claim that

---

[2]In view of appellants' concession as to the existence of a sufficient consideration, we do not discuss the question (raised in earlier cases) that there cannot be an accord and satisfaction in the absence of a dispute over the amount of the indebtedness. See generally 1 Cal. Jur.2d, Accord and Satisfaction, sections 19 and 20.

there was no meeting of the minds. ▆▆ E. E. Hays, the brother of one appellant, stated that his brother wanted to "settle the account"; this testimony was admitted without objection and appellants may not now raise the bar of the parol evidence rule. (*Pao Ch'en Lee* v. *Gregoriou*, 50 Cal.2d 502, 506 [326 P.2d 135], disapproving statements in *Lifton* v. *Harshman*, 80 Cal.App.2d 422 [182 P.2d 222] cited in appellants' brief.) ▆▆ Too, in 1954 one of the appellants (Rutherford B. Hays) sought an opinion of attorney Rogers and was told that a full settlement appeared to have been intended; thereafter, appellants continued to remain mute for a period of some four or five more years. The trial court was justified in drawing inferences favorable to respondent, namely, that the point presently made was a mere afterthought and particularly with respect to the claim that the $4,600 represented a purchase of the fixtures only. Commenting on this phase of the matter, the trial court summed up thus: "Hays had no title to the fixtures; he didn't have any right to sell them; to give a bill of sale for them . . . All he had was a security interest in them, and that was part of his security, to secure the entire balance." As a matter of fact, appellants' argument on appeal is out of harmony with the position asserted in their answer; there it was claimed that the sum of $2,533.74 was due and owing on the note, but if the nature of the payments had been a sale and purchase of the equipment, the entire balance would be $6,735.33 less seven monthly payments of $100, or $6,035.33.

Appellants concede that if there was an accord and satisfaction, then respondent's title to the real property can be quieted. Resolving all conflicts in favor of respondent and indulging in all legitimate and reasonable inferences to uphold the findings below, we hold that the determination reached by the trier of fact must be sustained.

For the foregoing reasons the judgment is affirmed.

Fourt, Acting P. J., and Scott (Robert H.), J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.