[Civ. No. 26668.   Second Dist., Div. One.   Feb. 1, 1963.]

LOUIS FIDLER, Plaintiff and Respondent, v. MICHAEL SCHILLER, Defendant and Appellant; MAX J. MORGAN et al., Cross-defendants and Respondents.

Alfred J. Smallberg and Benjamin P. Riskin for Defendant and Appellant.

Mortimer Vogel and Grant E. Propper for Plaintiff and Respondent and for Cross-defendants and Respondents.

LILLIE, J.—Plaintiff Fidler, by a complaint in five counts, sought recovery of monies said to have been wrongfully withheld by defendant Schiller, a real estate broker. Schiller, by cross-complaint, demanded of Fidler and others the balance of commissions assertedly due him. From a judgment adverse to him on both the complaint and the cross-complaint, Schiller has appealed. ▮▮ He has also noticed an appeal from the order denying his motion to vacate the above judgment and enter a different judgment (Code Civ. Proc., § 663) ; but since the trial court was simply called upon to repeat or overrule the former on the same facts, the order is nonappealable and the appeal therefrom must be dismissed. (*Simmons* v. *Santa Barbara Ice. etc. Co.,* 162 Cal.App.2d 23 [327 P.2d 141].)

Necessarily viewed in the light most favorable to the prevailing parties below, the record reveals that in August of 1960 Fidler and his assignors in this proceeding were the owners of eight apartment buildings situated in Torrance. Desirous of selling such properties, on August 1st of that year they gave Schiller a ten-day "exclusive" on each of the buildings for a commission of $1,000 apiece; this agreement was subsequently extended to September 20th. Schiller obtained buyers for all eight buildings, and escrows were thereafter opened on five of the eight transactions.

None of these escrows were consummated due to a cloud on the subject properties' title caused by the institution of litigation by a construction company and the filing of a *lis pendens* in connection therewith. The possibility of this cloud on the title was admittedly discussed with Schiller and his attorney, Mr. Vogel, on August 25th. That same day Schiller wrote and delivered to respondents the following letter:

"In line with the telephone conversation today with Mr. Vogel, I wish to state the following:

"That in the event you cannot deliver clear and proper title to the buildings in Torrance due to the Kabakow court action, then and in that event you shall not be liable for brokers commission to me.

"In other words, the commission is payable from the proceeds of the sale only."

The existing escrows thereafter were cancelled—with Schiller's assistance. Meantime, on September 19, respondents entered into an escrow to sell all eight properties to the ultimate owners. There was testimony that on the above date Fidler telephoned Schiller from the bank which was handling the escrow: "I called Mr. Schiller and told him that we can go into escrow with Mr. Kabakow, and what would his position be, and he said he would take—being that—being it's Mr. Kabakow, he would take $4,000; he would do all in his power to get everything cleared up so we shouldn't have any trouble. The only thing he did want was the $4,000 right away, in advance, and I said 'Mr. Kabakow wouldn't give it to you because he don't know if the deal will go through, but he will put it in escrow,' and Mr. Schiller agreed to those terms to me." Further, "I replied to Mr. Schiller that, Fine; on your word, of taking $4,000 and getting everything cleaned up, on your word, I will go to escrow with Kabakow."

Mr. Vogel, who was with his client, then took up the conversation. He testified in part as follows: "I spoke to Mr. Schiller and I specifically stated to him, 'Look, you know that the only way we can sell this deal is if you take the $4,000 commissions.' His statement was, 'I will take the sum of $800 per building as I release it—as I get the release for the five buildings, because you know as well as I do that Kabakow cannot go through with the deal.'" After some further discussion, Schiller asked Vogel: "Will you guarantee the $4,000?" Vogel replied that "there was no guarantees" but added that "there is nothing to lose, insomuch as if the deal goes through, you will get your $4,000, and if the deal does not

go through, why then we can make a deal with you, or you are in a position to foreclose."[1] Schiller then told Vogel: "Put it into escrow. I will accept the $4,000 and make that deal."

Following the above conversations, escrow instructions were signed by the parties thereto. One such instruction (or statement), the trial court found, declared that "A demand for commission in connection with the said other sales escrows is made by Michael Schiller in the sum of $4,000, and the buyer herein and Meyer Kabakow and Kabakow Construction agree to pay said Michael Schiller the said amounts of commission due him and agree to hold the sellers harmless by reason that any claims or suits as may be instituted by Michael Schiller. Said sum to be paid in addition to the purchase price of the parties herein." Schiller has little to say respecting evidentiary support for the above finding. He does, however, challenge a related finding that he knew of the foregoing statement or declaration in the escrow instructions; in this connection, the trial court found that Schiller had lent his cooperation (as noted earlier) in cancelling the prior escrows and thus helped to accomplish completion of the second (and later) escrow transaction.

After several delays, the escrow was finally in condition to be closed at the end of December. On January 3, 1961, (not December 31, a Saturday, as testified by a bank official) Schiller appeared at the bank, as escrow holder, and picked up his check, dated January 3, 1961, in the sum of $4,000. He gave the bank a receipt, bearing the same date, which read "Commission fee."

The following day (January 4) Schiller submitted an "accounting" to Fidler and his assignors. As appears in footnote 1, *supra*, Schiller had acquired ownership of the notes secured by second trust deeds on certain of the apartment buildings.[2] The owners of the buildings being in default, he proceeded to collect rents in the total sum of $5,242.50, from the various tenants. From this sum Schiller deducted $4,000 claimed as commissions (making a total of $8,000) and an additional sum of $293.43, tendering a check to respondents in the amount of $947.43. This check was refused, and the present litigation thereafter commenced.

The court in effect found that Schiller by way of commis-

---

[1]Schiller, it appears, had then become the owner of second trust deeds on five of the properties.

[2]All amounts due him thereunder were subsequently received from the second escrow.

sions was entitled only to the $4,000 received from the second escrow; it therefore concluded that he was not entitled to the additional $4,000 retained from the rents collected. Except for an item involving $55.83, judgment was accordingly rendered against him for all sums collected as rent, namely, $5,186.67. The court also concluded that although Schiller had earned his $8,000 commissions on the original deals, he thereafter agreed to, and did, accept $4,000 as his compensation in full.

The judgment appealed from is defended by respondents upon several theories. They argue that Schiller's rights under the exclusive sales agreement were extinguished because subsequent events and transactions (above related) constituted, collectively or singly, either (1) an executed oral agreement modifying the original written contract (Civ. Code, § 1698), or (2) an accord and satisfaction, or (3) a novation. Under (1), above, it is further argued that Schiller is estopped to assert his present claims by reason of his failure, at the time of tender, to specify any objection to the check received (Code Civ. Proc., § 2076). The plurality of these theories arises from certain statements in the trial court's memorandum of decision, part of the record on appeal, which perhaps leaves the impression that its determination of the issues was based upon more than one ground. For example, the decision of this court in *Dunlap* v. *Bellah,* 184 Cal.App.2d 579 [7 Cal.Rptr. 766], is cited in the memorandum for the conclusion that Schiller was estopped from additional recovery because he failed to protest that the payment was on account only—the *Dunlap* case, of course, related to accord and satisfaction.

The question on appeal, however, is the correctness of the decision on the basis of the pleadings and proof. We have concluded that the judgment is properly sustainable under (1), above. It is provided that "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." (Civ. Code, § 1698.) An executed oral agreement is one, the terms of which have been fully performed. Section 1698 has been applied to numerous forms of transactions, particularly those concerning the sale, transfer or leasing of real property. For instance, it has been held that where there was performance of and effect given to an oral change of the selling price specified in a written agreement for the sale of land by a broker, a commission may be collected. (*Moore* v. *Borgfeldt,* 96 Cal.App. 306, 311 [273

P. 1114].) In *Bard* v. *Kent,* 37 Cal.App.2d 160 [99 P.2d 308], the defendant broker was permitted to retain commission in excess of those initially agreed to; citing section 1698, the court said: "The oral agreement of decedent and defendant in 1929 providing for his commissions on said lots A, B and C and for the conveyance to him of said lots 3 and 4 was fully executed in every respect. It is binding upon them and their successors and the parol evidence rule is inapplicable." (P. 163.)

If credit, as it must, be accorded the testimony produced by respondents, the factual situation is well within the principles reenunciated in the cases above cited—and many more could be mentioned. Reluctant to rerelate the decisive facts, it is only necessary to repeat what Schiller told Attorney Vogel in the course of their telephone conversation on September 19: "Put it into escrow. I will accept the $4,000 and make that deal." Pursuant to such commitment, the second escrow was opened; therefrom Schiller admittedly received the monies agreed upon. True, he did within 24 hours of the monies' receipt present an "accounting" purportedly in the nature of an objection to the tender of the sum in question. We hold that under the circumstances at bar he is estopped from asserting such objections (Code Civ. Proc., § 2076).

The well-known rule of waiver has been codified by section 2076, *supra.* It has been applied to cases involving executed oral agreements (*Julian* v. *Gold,* 214 Cal. 74 [3 P.2d 1009]) and other controversies wherein section 1698 of the Civil Code has been invoked (*Wagner* v. *Shapona,* 123 Cal. App.2d 451 [267 P.2d 378]; *Wade* v. *Markwell & Co.,* 118 Cal.App.2d 410 [258 P.2d 497, 37 A.L.R.2d 1363].) Section 2076, *supra,* reads as follows: "The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards."

It will be recalled that the second escrow was opened on or about September 19, 1960, and closed at the end of December of that year—Schiller received his check on January 3, 1961. The trial court found (Finding XVII) that the second escrow specifically made mention of Schiller's demand for a $4,000 commission in connection with the prior escrows. The same

finding further declared in part that "the said Michael Schiller knew that said statement had been placed in escrow. That the said Michael Schiller was advised that the escrow was opened with Norwalk-Lakeland Corporation and the said Michael Schiller cooperated in cancelling the escrows opened by him and all purchasers secured by said Michael Schiller did withdraw from their escrows, and all monies deposited by prospective buyers with Michael Schiller were returned and such deals cancelled." In Finding XXI it was found that "although the said Michael Schiller was not a party to said escrow, he was advised that said escrow was opened. He was advised that the $4,000 was to be delivered to him upon the close of escrow. He received said $4,000 from said escrow as commission due him, and he accepted such $4,000 as commission due him. That he possessed full knowledge of the basis and conditions of payment of said $4,000 commission. That he never at any time protested or advised plaintiff or plaintiff's assignors or cross-defendants that the said $4,000 was to be considered by him as payment on account only."

Schiller is especially critical of the concluding part of Finding XXI that he "never at any time" protested or advised plaintiff that the sum in question was on account only. Under the particular facts of the instant case the point is not well taken; in our opinion, such facts constitute a proper case for the application of the rule of equitable estoppel. ▮ Prior to the opening of the second escrow, at a time when plaintiff was negotiating with interested parties for a sale of the subject buildings, defendant assured plaintiff that he would accept the lesser sum "and make that deal." Thereafter, for three and one-half months, he permitted, indeed he actually aided, the closing of that deal through the escrow opened pursuant to his representations. This change of position by the plaintiff in reliance upon the promise of the defendant justified the trial court in rejecting the defense that upon the receipt and cashing of the escrow holder's check he was still free to assert his objection to the amount tendered. Interestingly enough, in his closing brief Schiller concedes that "he had knowledge of some of the provisions of the [escrow] instructions, [but] was under no duty or obligation to register any objections." ▮ Such argument ignores the reason for the rule stated in section 2076 that a debtor who is able and willing to pay his debt has a right to know what his creditor will demand, so that his offer may be

made to conform if he chooses to do so. (*Heimstadt* v. *Tapered Parts, Inc.*, 155 Cal.App.2d 711 [318 P.2d 689].)

Nor are we impressed by the further argument that the controlling escrow instruction and the escrow-holder's check did not recite that the sum of $4,000 was "in full" or contained similar language. From the telephone conversation of September 19, and other evidence in the case, the trial court had the right to draw the reasonable inference that such sum constituted a complete release of any rights possessed by Schiller under the then existing exclusive sales agreement.

In view of the above conclusions, we have purposely refrained from discussing other theories, argued pro and con, which assertedly support (or defeat) the judgment. And such discussion, unnecessary to the result, would needlessly prolong this opinion and simply add to "the problem of the alarming encroachment of our shelves made by the published reports." (37 State Bar J. 946.)

The only other point warranting comment takes issue with certain findings. As we view his contentions, defendant is simply arguing the evidence and asking this court to draw inferences contrary to those drawn by the trial court. Furthermore, there has not been sufficient compliance with the established rule that where an appellant contends that certain findings are not supported, he must set forth in his brief all the material evidence in question and not merely his own proofs; if this is not done, any error is deemed waived. (*Guardianship of Turk*, 194 Cal.App.2d 736 [15 Cal.Rptr. 256].)

In conclusion, much of appellant's argument seems to be a repetition of that made to the trial court on the motion for a new trial, which concludes as follows: ". . . before courts will set aside a solemn, binding, written contract and substitute an oral agreement, proof of every element of the latter, as well as its execution must be clear and convincing. The purported oral telephone conversations can hardly be dignified by declaring them to be clear and convincing." While clear and convincing proof demands a high probability of its verity, the question whether such proof belongs in that category is for the trial court whose determination on conflicting evidence will not be disturbed on appeal. (*Hansen* v. *Bear Film Co.*, 28 Cal.2d 154, 173 [168 P.2d 946].)

The judgment is affirmed; the attempted appeal from the order is dismissed.

Wood, P. J., and Fourt, J., concurred.