Filed 5/1/25  Swan Engineering v. Tuscan Ridge Associates CA3

# NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| SWAN ENGINEERING, INC., | C098983 |
| Plaintiff and Appellant, | (Super. Ct. No. 20CV00061) |
| v. | |
| TUSCAN RIDGE ASSOCIATES, LLC, | |
| Defendant and Respondent. | |

Plaintiff Swan Engineering, Inc. was hired by defendant Tuscan Ridge Associates, LLC to perform construction work related to the cleanup in Paradise, California, following the Camp Fire.  Plaintiff asserts that the work took longer and cost more than originally contemplated.  When defendant would not compensate plaintiff for what it characterized as additional work beyond the scope of the contract, plaintiff sued for breach of contract and related claims.  After a bench trial, the trial court entered judgment in favor of defendant.

1

On appeal, plaintiff argues that the trial court failed to make necessary factual findings, a matter we will address in connection with plaintiff's substantive arguments that: (1) verbal change orders are common and enforceable and the trial court failed to make a finding as to whether the parties verbally agreed plaintiff would perform additional work; (2) the trial court erred in failing to consider changed circumstances that would render enforcement of the contract inequitable; (3) defendant waived the contractual requirement that change orders be in writing; (4) the trial court erred in failing to consider estoppel; (5) and the trial court erred in ignoring plaintiff's quantum meruit claim. Finding no error, we will affirm the judgment.

## BACKGROUND

### *The Complaint*

Plaintiff filed a complaint asserting causes of action for (1) breach of contract, (2) quantum meruit, (3) open book account, (4) account stated, and (5) foreclosure on a mechanic's lien. According to the complaint, the parties entered into a written contract on or about April 10, 2019, pursuant to which plaintiff agreed to perform certain construction work for defendant.

The complaint generally alleged that defendant breached the contract by, among other things, requiring plaintiff to perform work beyond the scope of the contract and failing to pay for that work. In the quantum meruit cause of action, plaintiff asserted that defendant owed plaintiff not less than $725,000 as the reasonable value of labor, equipment, and materials furnished. The open book account and account stated causes of action largely reiterated the allegations in the quantum meruit cause of action. Plaintiff also sought to foreclose on a mechanic's lien it had secured in the amount of $722,149.

### *The Written Contract and Written Change Orders*

In the written contract, signed on April 10, 2019, defendant agreed to pay plaintiff $494,193 for the work contemplated by the contract, "subject to adjustments for changes in the work as may be agreed to in writing by the Owner and the Contractor." The work

2

performed included the installation of two storage ponds, one design pond and one auxiliary pond, for use with a wastewater treatment facility. The contract contained an integration clause, providing: "**ENTIRE AGREEMENT.** This Contract represents the entire agreement between the Contractor and the Owner regarding the work described in Section 1 and supersedes any prior written or oral agreements or representations as to that work." The contract provided that time was of the essence, and that plaintiff would "complete the work on or before the date that is thirty (30) days from receipt of a notice to proceed from Owner." The contract also provided that plaintiff "acknowledges and agrees that the work includes extensive rock excavation and hammering and the contract amount is inclusive of all such work, including damage to Contractor's equipment. There shall be no change orders for any such items." Section 9 of the contract, addressing changes in work, provided: "Whenever an adjustment in the Contract price or Contract time is required because of Owner's request, differing site conditions, errors in the plans and specifications, or other circumstances beyond the control of Contractor . . . , the Contractor shall submit to the Owner within a reasonable time a detailed estimate, with supporting calculations, pricing and adjustments in the schedule of the change to the Contract price and the Contract time including a 10% markup for Overhead and 10% markup for Profit. . . . However, to the extent that such pricing is inapplicable, cost of the change or the amount of the adjustment shall be determined based on the cost to the Contractor plus reasonable amounts for overhead and profit, not to exceed 20%. . . . [¶] The Contractor shall not be obligated to perform changes in the work or additional work until the Owner has approved, in writing, the changes to the Contract price and the Contract time."

The parties executed written change orders one through six on April 12, 2019, adding a total of $212,703 to the contract price, resulting in a revised contract amount of $706,896.

3

## The Trial

Defendant worked on the installation of a wastewater treatment facility for use by a base camp being established for workers involved in the cleanup of Paradise following the Camp Fire. Justin Swanson, a principal for plaintiff, submitted a bid to construct ponds for use with the treatment facility. Defendant accepted plaintiff's bid and the parties entered into the written contract.

Swanson testified that there were two substantial changes made to the project plans as the project was ongoing. First, on April 22, 2019, Swanson received an email from Lance Bates (Lance),[1] an employee of defendant, that included "a plan set that was different than the original . . . ." The change, based on the topography of the land, resulted in a switch in the project from the original plan "of cutting, excavating down, 90 percent of the work, and 10 percent of that being fill, to a situation where we had to cut down 50 percent of the time and fill the other 50 percent of the time." In other words, plaintiff "had to add dirt and build the banks of the pond instead of cutting it into the ground." While the original plan indicated the topography for the site was level, in reality, one end of the site was 14 or 15 feet higher than the original plan indicated. This change required plaintiff to perform additional "fill" work. According to Swanson, building up takes more time and resources than digging down. Lance disagreed, testifying that "fill" work is quicker than "cut" work.

Another factor that contributed to the increased cost of the project was that according to Swanson, plaintiff could not achieve the necessary results at the site with a D10 size dozer, so they had to get a larger D11 size dozer. According to Swanson, Lance had represented that a D10 would be sufficient. Swanson acknowledged, however, that

---

[1]    Given the shared surname with this witness and his father, also a member of defendant, we will refer to each of them by their first names to avoid any confusion. No disrespect is intended.

plaintiff's proposal did not specify the use of a D10 size dozer, and there was no mention of a D10 in any of the change orders. He also acknowledged he never notified defendant in writing about differing site conditions. He testified that "[w]e did it verbally."

Swanson testified that, as a result of circumstances that differed from what was anticipated, he asked for a change order. According to Swanson, there were two ways to create a change order. One involved stopping work to perform analysis and generate the change order. The other, applicable when time is of the essence, is to track costs through what is known as a "time and material plus" or "cost plus" arrangement, which contemplates billing for time and materials, or costs, plus an added amount for profit. Initially, Swanson proposed stopping and generating a change order, but Lance was adamant about continuing with the project given the timeline. According to Swanson, Lance assured him that "they would make it right." Swanson agreed to proceed with the project on a "cost plus" basis and that he would bill defendant for time and materials plus 20 percent. Swanson did not submit a change order in writing memorializing this understanding. "It was just verbal." According to Swanson, the conversation about changing the agreement to time and materials plus that he had with Lance and Scott Bates (Scott), Lance's father, occurred sometime in mid-May 2019.

Plaintiff received the second set of revised plans, the third overall, on June 4, 2019. Swanson's understanding was still that any changes in costs resulting from the new plans were to be identified at the project's end. He testified that, as the project proceeded, "we kept track of the items that were being talked about or asked to perform, but we didn't put a change order together. We just kept it as part of the understanding this was going to be a cost plus job."

While the job had been scheduled to last 30 days, it ended up taking about two and a half months, lasting into July 2019. Sometime after completing the project, Swanson sent Scott and Lance an email about the additional costs incurred in the project. In the email, dated July 18, 2019, Swanson stated that there were cost overages due to issues

5

enumerated in the email. The email stated that the "push to get this project complete kept all of us working instead of stopping and issuing change orders for all the issues/delays. In my opinion, a fair approach to make [plaintiff] whole would be to pay the cost plus 20%. There were some inefficiencies on our side so I would be willing to do a cost plus 15% since our overhead still needs to be captured. Please advise if this would be acceptable to you or if you would like to sit down and discuss more."

On November 8, 2019, plaintiff, through Swanson, sent another email, this one to Courtney McAlister, a minority member and legal counsel for defendant, stating: "I . . . have put together the narrative for why this project turned into a [time and materials] project. I am asking for the final contract to be increased to the amount of my costs plus 20% due to the plan changes that caused us to take this site that was originally a major export site and turn it into a major fill site that included much less export. My current costs for this are attached. Would meeting next Friday work for everyone so we can meet to finalize this issue?" Swanson acknowledged at trial that, in this email, he was requesting that the contract be increased.

When defendant did not agree to a resolution, on October 11, 2019, Swanson filed a lien on the property in the amount of $722,149. This amount represented the itemized cost of the job plus the overhead and profit of 20 percent, less what plaintiff had already been paid.

Lance testified that he always does change orders in writing, "100 percent of the time," and that he does not do verbal change orders. "If something changes from the plans, there is a change order in writing."

Lance testified that Swanson's testimony—that Swanson, Lance, and Scott agreed to change the agreement to a time and materials plus arrangement—was not true. According to Lance, Swanson never contacted him about changing the terms of the agreement. Lance also testified that he did not have the authority to unilaterally bind defendant. Defendant could only be bound by "[u]s as a team, and then the managing

6

member," which, at the time, was Scott. Lance testified that he and Scott alone did not have the authority to bind defendant or modify any contracts defendant entered into. Lance testified he never submitted any proposal from Swanson to the "entire Tuscan team" because "we never got one." Lance testified again that there was never any discussion with Swanson about changing the agreement to one for time and materials plus or changing anything about the contract.

Scott testified that he did not recall any meeting with Lance and Swanson at the job site, nor any conversation about changing the terms of the agreement. Scott also testified that, according to defendant's operating agreement, to change a contract with a third party, the matter would have to be put to a vote of the members. "Anything that would bind the partnership would have to be . . . approved by the" members. Lance and Scott first learned Swanson was seeking additional payment after the project was completed.

*Statement of Decision and Judgment*

Following the trial, defendant requested a statement of decision. (See Code Civ. Proc.,[2] § 632.) Defendant and plaintiff each submitted a proposed statement of decision.

In its statement of decision, the trial court first concluded there was no breach of contract. Swanson admitted he did not submit written change orders as the contract required. The court found that, between July 2019 and November 2019, "there were various attempts by Mr. Swanson to modify the written Contract price term to 'time and materials.' However, . . . there was never a 'meeting of the minds' to convert the original Contract into a 'time and materials[] plus 20%' contract." These discussions, instead, were " 'negotiations,' " but "no agreement was ever reached." The court concluded: "Swan's argument that there was an oral modification changing the . . . contract from a

---

[2]     Further undesignated section references are to the Code of Civil Procedure.

7

fixed amount to a 'time and materials' plus 20% is based solely on his testimony. The Court finds there is no further collaborating [*sic*] evidence. . . . Thus, there is no breach of the original Contract by" defendant.

The trial court also found that defendant never waived any terms of the written contract. The court found no clear and unambiguous promise by defendant to be enforced and to which estoppel might be applied. As for plaintiff's quantum meruit cause of action, the trial court stated: "[T]he original Contract, including the written Change Orders Nos. 1-6, is an enforceable contract. Therefore, there is no equitable basis for an implied-in-law promise to pay reasonable value for services rendered. There are no missing contractual terms in the original Contract. A quantum meruit analysis cannot supply 'missing' terms that are not missing." The court found no support for plaintiff's other causes of action.

The trial court concluded: Defendant "did not breach the Contract. There is no legal basis for the Mechanic's Lien, and it is discharged. All of [plaintiff's] claims are denied. [Defendant] is granted its costs and reasonable attorney's fees."

A judgment set forth findings consistent with the statement of decision and was in favor of defendant and against plaintiff.

DISCUSSION

I

*Standard of Review and Appellate Procedure*

Plaintiff contends that the trial court's decision was based exclusively on a question of law, and therefore we must apply a de novo standard of review. However, as we shall discuss, issues of fact are also implicated in the trial court's decision. "In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).) "Substantial evidence means evidence of ponderable legal

8

significance that is reasonable, credible, and of solid value." (*Gillotti v. Stewart* (2017) 11 Cal.App.5th 875, 899.) "Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson,* at p. 981.) "It is not our role as a reviewing court to reweigh the evidence or to assess witness credibility." (*Ibid*.) "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

On appeal, it "is the appellant's burden to demonstrate the existence of reversible error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766 (*Del Real*).) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) The appellant must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).)[3] " '[W]e may disregard factual contentions that are not supported by citations to the record . . . .' " (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861 (*County of Sacramento*).) "We are not required to scour the record in search of support for a party's factual statements and may disregard such unsupported statements." (*Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523, 527, fn. 3.)

II

*The Trial Court's Factual Findings and the Doctrine of Implied Findings*

Plaintiff argues that the trial court failed to make necessary findings of fact. Plaintiff identifies three issues central to its case: (1) whether the parties agreed upon an

---

[3]     All further rule references are to the California Rules of Court.

9

expanded or different scope of work than what appears in the written contract, (2) whether plaintiff performed this work, and (3) whether damages are appropriate under either mutually agreed-upon terms or based on quantum meruit. Plaintiff then argues that the trial court did not make findings of fact on these issues. Defendant counters that plaintiff's contention is contrary to the record, and that we must affirm because plaintiff did not object to the statement of decision. We will address the trial court's factual findings, or the absence thereof, in reference to the substantive issues addressed, *post*.

" '[U]nder the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision.' " (*Thompson, supra*, 6 Cal.App.5th at p. 981.) However, when a "request for a statement of decision has been made, the scope of appellate review may be affected." (*Ibid*.) To avoid an implied finding in favor of the prevailing party after issuance of a statement of decision, a party must raise an objection. (*In re Marriage of Arceneaux, supra*, 51 Cal.3d at p. 1133; see § 634 [when "a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court . . . , it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue"].) If "a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient in these regards, and hence the appellate court will imply findings to support the judgment." (*In re Marriage of Arceneaux,* at pp. 1133-1134.)

III

*Breach of Contract, Verbal Change Orders, and Changed Circumstances*

Relevant to the breach of contract cause of action, the trial court found that plaintiff did not submit written change orders as required under the contract. Plaintiff argues that, notwithstanding this omission, verbal change orders are common and enforceable, and that the trial court failed to make a factual finding as to whether the

10

parties verbally agreed plaintiff would perform additional work. Plaintiff further argues that the court failed to consider changed circumstances that rendered enforcement of the contract inequitable. We disagree.

A.    *The Contractual Written Change Order Requirement*

" 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract.' [Citation.] In interpreting a contract, we give the words their ordinary and popular meaning, unless the parties or usage have given the words a specialized or technical meaning." (*Coral Farms, L.P. v. Mahony* (2021) 63 Cal.App.5th 719, 727.)

The trial court found: "Swanson admitted that written 'Change Orders', as required by the written Contract, were never submitted for this work because of time constraints imposed by the original Contract. A plain reading of the parties' Contract indicates that it was [plaintiff's] sole responsibility to advise [defendant] of the increase in any charges and obtain approval for such additional costs and expenses in writing. This was to be done using written Change Orders. This did not occur."

We agree with the trial court's findings. Section 2 of the contract provided that defendant agreed to pay plaintiff for the work contemplated by the contract, "subject to adjustments for changes in the work as may be agreed to in writing by the Owner and the Contractor." Section 9 of the contract, addressing changes in work, provided, in part: "Whenever an adjustment in the Contract price or Contract time is required because of Owner's request, differing site conditions, errors in the plans and specifications, or other circumstances beyond the control of Contractor . . . , the Contractor shall submit to the Owner within a reasonable time a detailed estimate, with supporting calculations, pricing and adjustments in the schedule of the change to the Contract price and the Contract time . . . ." Plaintiff would not be obligated to perform the additional work until defendant "approved, in writing, the changes . . . ." The contract also stated that the

11

written contract "represents the entire agreement between the" parties "regarding the work described . . . ."

The contract required plaintiff to submit detailed change orders to defendant for approval in writing. Plaintiff does not challenge this premise. It is undisputed Swanson did not submit written change orders; he acknowledged as much in his testimony. The trial court's conclusions that the contract required plaintiff to submit written change orders, and that plaintiff failed to do so, are correct. That, however, does not end our inquiry as to whether changes to the contract were agreed upon by the parties.

B.     *Verbal Change Orders*

Plaintiff contends that, notwithstanding the express language of the written contract, verbal change orders are common and enforceable in the construction industry, and the contractual requirement for written change orders may be overcome where the agreed-upon changes were performed. Plaintiff argues the trial court failed to make factual findings as to whether the parties agreed upon a different scope of work than what appears in the written contract. We disagree.

"A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties." (Civ. Code, § 1698, subd. (b).) Thus, where "the terms of a written contract require that extra work be approved in writing, such provision may be altered or waived by an executed oral modification of the contract." (*Healy v. Brewster* (1967) 251 Cal.App.2d 541, 552.) "An executed oral agreement is one, the terms of which have been fully performed." (*Fidler v. Schiller* (1963) 212 Cal.App.2d 569, 573.) " 'Whether a writing has been modified by an executed oral agreement is a question of fact.' " (*Eluschuk v. Chemical Engineers Termite Control, Inc.* (1966) 246 Cal.App.2d 463, 469.) Thus, notwithstanding the requirement in the written contract that change orders must be in writing and submitted by plaintiff, the parties could have modified the agreement by an executed oral agreement.

12

The trial court found that, between July and November 2019, Swanson repeatedly attempted to convert the written contract price term to one for time and materials plus profit. However, the court expressly found: "[T]here was never a 'meeting of the minds' to convert the original Contract into a 'time and materials' plus 20%[] contract. The Court finds there were some discussions between the parties that were described by Swan as 'negotiations'. But, no agreement was ever reached. This was made clear by [defendant's] attorney in the letter of Nov. 18, 2019 . . . ." The court concluded: "[Plaintiff] has the burden to show that there was a modification to the written Contract. [Plaintiff's] argument that there was an oral modification changing the price of the contract from a fixed amount to a 'time and materials' plus 20% is based solely on [Swanson's] testimony. The Court finds there is no further collaborating [*sic*] evidence. [Plaintiff's] claim for an oral modification of the parties' written Contract is denied. Thus, there is no breach of the original Contract by" defendant.

Plaintiff's argument that the trial court did not make factual findings as to whether the parties agreed to a different scope of work than what appears in the written contract, and to the modification of that agreement, is belied by the statement of decision. The court expressly found that there was no meeting of the minds to convert the original written contract into a time and materials plus 20 percent arrangement and that no modification of the written contract occurred. Resolution of the other issues plaintiff claims the trial court failed to address in its factual findings—whether plaintiff performed the "verbally agreed-to additional work" and whether damages are appropriate—was obviated by the court's express finding that there was no verbal agreement.

In its briefing, plaintiff does not argue that the trial court's findings are not supported by substantial evidence. " 'We are not obliged to make . . . arguments for [appellant] [citation], nor are we obliged to speculate about which issues counsel intend to raise.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142,

13

153; see *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' arguments for them"].)

As stated, the judgment is presumed correct on appeal. (*In re Marriage of Arceneaux, supra,* 51 Cal.3d at p. 1133.) Plaintiff has not carried its burden of demonstrating reversible error. (*Del Real, supra*, 95 Cal.App.4th at p. 766.)

C.    *Changed Conditions and Circumstances*

Plaintiff argues that the trial court erred in failing to consider changed conditions and circumstances. According to plaintiff, the court was required to interpret the contract reasonably to avoid unusual, extraordinarily harsh, unjust, or inequitable results. However, the trial court's ruling did not specifically address whether changed conditions existed.

In raising this argument, plaintiff relies on two "maxims of jurisprudence" (Civ. Code, § 3509), Civil Code sections 3542 and 3520. The former provides that "[i]nterpretation must be reasonable" (Civ. Code, § 3542), and the latter provides that "[n]o one should suffer by the act of another" (Civ. Code, § 3520). Plaintiff also cites to cases stating that "[c]ourts should avoid an interpretation which will make a contract 'unusual, extraordinary, harsh, unjust or inequitable,' " and that "a contract will not be construed so as to place one party at the mercy of another." (*Yamanishi v. Bleily & Collishaw, Inc.* (1972) 29 Cal.App.3d 457, 462-463; see also *Hertzka & Knowles v. Salter* (1970) 6 Cal.App.3d 325, 335; *Hawley v. Orange County Flood Control Dist.* (1963) 211 Cal.App.2d 708, 716.)

The trial court did not expressly address this issue in its statement of decision. However, plaintiff did not object to this alleged deficiency. Generally, a party's failure to object to the trial court's statement of decision based on a specific alleged deficiency affects a forfeiture of the right to claim on appeal that the statement of decision was deficient in that respect. (*In re Marriage of Arceneaux, supra*, 51 Cal.3d at pp. 1133-1134.)

14

Without citation to authority, plaintiff contends that it preserved the issue by submitting its proposed statement of decision. Plaintiff is mistaken. The "ability to submit a proposed statement of decision in advance is no substitute for an opportunity to object to the court's own statement of decision: '. . . section 634 and California Rules of Court, [former] rule 232, taken together, clearly contemplate any defects in the trial court's statement of decision must be brought to the court's attention through specific objections to the statement itself, not through a proposed alternative statement of decision served prior to the court's issuance of its own statement. By filing specific objections to the court's statement of decision a party pinpoints alleged deficiencies in the statement and allows the court to focus on facts or issues the party contends were not resolved or whose resolution is ambiguous. A proposed alternative statement of decision . . . does not serve these functions and does not satisfy the requirements of . . . section 634 and California Rules of Court, [former] rule 232.' " (*Bay World Trading, Ltd. v. Nebraska Beef, Inc.* (2002) 101 Cal.App.4th 135, 140.)

Because plaintiff's proposed statement of decision did not satisfy the requirements of section 634 and rule 3.1590 (the renumbered version of former rule 232) so as to avoid an implied finding in favor of defendant (*Bay World Trading, Ltd. v. Nebraska Beef, Inc., supra*, 101 Cal.App.4th at p. 140), we must infer that the trial court impliedly made every factual finding necessary to support its decision (*Thompson, supra*, 6 Cal.App.5th at p. 981). Thus, contrary to plaintiff's contention that the trial court erred in failing to consider the changed conditions and circumstances, we must infer that the court *did* consider this contention *and made every factual finding necessary to support its decision.* (*Ibid.*)

To the extent that plaintiff contends the trial court's implied findings are not supported by substantial evidence, we disagree. Plaintiff argues: "The two new sets of plans caused the value of the work performed to double, and the time for completion to triple, thus, the changes to the plans were significant. Not compensating Plaintiff for

15

such significant changes to the written contract is unusual, harsh, unjust, and inequitable, giving the trial court leeway to acknowledge the existence of the verbally agreed-to changes."

Plaintiff, however, does not cite to any trial evidence to support its argument. An appellant has the burden to prove a judgment is flawed "by presenting legal authority on each point made and factual analysis, *supported by appropriate citations to the material facts in the record . . . ."* (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655, italics added; accord, *County of Sacramento, supra*, 65 Cal.App.5th at p. 861; rule 8.204(a)(1)(C); see also *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8 [failure to cite to the record to support factual representations in the argument section of a brief is not cured by the presence of record citations in the statement of facts].)

As stated, a judgment is presumed to be correct on appeal (*In re Marriage of Arceneaux, supra*, 51 Cal.3d at p. 1133), and it is the appellant's burden to demonstrate reversible error (*Del Real, supra*, 95 Cal.App.4th at p. 766). To the extent plaintiff argues that the trial court's implied findings are not supported by substantial evidence, plaintiff has not carried its burden.

IV

*Waiver of Contractual Written Change Order Requirement*

Plaintiff maintains that a contractual written change order requirement may be waived, and that defendant waived that requirement here by monitoring and accepting plaintiff's additional work. According to a case on which plaintiff relies, at least with regard to private contracting parties, if "the parties, by their conduct, clearly assent to a change or addition to the contractor's required performance, a written 'change order' requirement may be waived." (*Weeshoff Construction Co. v. Los Angeles County Flood Control Dist.* (1979) 88 Cal.App.3d 579, 589.)

16

As previously indicated, plaintiff did not submit a written change order as contemplated by the contract. Thus, the issues here are whether there was a change or addition to plaintiff's required performance, and whether defendant's conduct can be interpreted as constituting a waiver of the contractual written change order requirement.

On these points, plaintiff's briefing states: "Defendants, by their own admission, testified that the original plans were changed two times without written change orders. The changes were made based on the changed plans presented by Defendants. After the new plans were presented, . . . Lance . . . was physically at the jobsite and was aware that the work performed was according to the new sets of plans. The written contract and written change orders could not have contemplated the new plans because those written documents were prepared by Plaintiff days before Plaintiff saw the first set of new plans, and well before having an opportunity to see the second set of new plans. As in Weeshoff Construction Co. [*Weeshoff Construction Co. v. Los Angeles County Flood Control District, supra*, 88 Cal.App.3d at pp. 589-590], the parties' conduct shows clear assent to the change or addition to the contractor's required performance."

What plaintiff fails to do, however, is identify or describe the specific changes to plaintiff's work which it was newly required to perform; demonstrate that this work was not contemplated by or outside the scope of the original contract; specify how Lance, through his conduct, beyond being physically present at the job site, demonstrated clear assent to changes or additions to plaintiff's required performance; and, crucially, cite to evidence in the record to support its contentions. (See *County of Sacramento, supra*, 65 Cal.App.5th at p. 861 [we may disregard factual contentions not supported by citations to the record].) Once again, a judgment is presumed to be correct on appeal (*In re Marriage of Arceneaux, supra*, 51 Cal.3d at p. 1133), and it is the appellant's burden to demonstrate reversible error (*Del Real, supra*, 95 Cal.App.4th at p. 766). Plaintiff's assertions, without specific factual allegations, citations to the record to support those

allegations, and cogent legal analysis applying the law to those facts, are insufficient to satisfy its burden of demonstrating reversible error.

V

*Estoppel*

According to plaintiff, the trial court erred in failing to consider estoppel because plaintiff performed and reasonably relied on defendant's conduct and promises to pay more than the original bid for plaintiff's additional labor and costs. We disagree.

" 'The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." ' " (*Flintco Pacific, Inc. v. TEC Management Consultants, Inc.* (2016) 1 Cal.App.5th 727, 734.) "Although 'promissory estoppel is an equitable doctrine [and] courts are given wide discretion in its application' [citations], '[t]he existence of an estoppel is generally a question of fact for the trial court whose determination is conclusive on appeal unless the opposite conclusion is the *only* one that can be reasonably drawn from the evidence.' " (*Ibid*.)

Plaintiff's argument that the trial court erred in failing to consider estoppel is simply wrong. The statement of decision contains a separate paragraph dedicated to its consideration, and rejection, of plaintiff's estoppel argument. The trial court concluded that the promise sought to be enforced was missing; that such a promise must be clear and unambiguous; and that there was "no clear and unambiguous promise made by [defendant] for which estoppel applies." The judgment contained the same conclusion.

Paradoxically, while plaintiff argues that the trial court failed to consider estoppel, plaintiff also disputes the trial court's conclusion that there was no promise made by defendant to which estoppel would apply. Specifically, plaintiff argues: "Defendants provided two new sets of plans that significantly changed the scope of the project. Defendants provided these two new sets of plans without providing or requiring written

18

change orders before Plaintiff performed the work. Plaintiff performed additional work after being presented with modified plans, twice, relying on the fact that Defendants requested Plaintiff perform the additional or different work, and watched as the work based on the new plans was carried out."

At trial, as found by the trial court, plaintiff failed to identify any " ' "promise clear and unambiguous in its terms" ' " made by defendant that would give rise to an estoppel. (*Flintco Pacific, Inc. v. TEC Management Consultants, Inc., supra*, 1 Cal.App.5th at p. 734.) In its proposed statement of decision, plaintiff only recited, in a sentence, its interpretation of the rule of estoppel, and did not identify a clear and unambiguous promise on which it relied. On appeal, again, plaintiff fails to identify any clear and unambiguous promise made by defendant on which plaintiff relied. Nor has plaintiff cited any evidence in the record in support of its factual representations. (See *County of Sacramento, supra*, 65 Cal.App.5th at p. 861.) Plaintiff has not satisfied its burden of demonstrating its entitlement to relief from the judgment. (See generally *In re Marriage of Arceneaux, supra*, 51 Cal.3d at p. 1133 [judgment presumed correct]; *Del Real, supra*, 95 Cal.App.4th at p. 766 [appellant's burden to demonstrate reversible error].)

## VI

### *Quantum Meruit*

Plaintiff asserts that the trial court erred in "ignoring" its quantum meruit claim because, regardless of the written contract, plaintiff's additional work was beyond the scope of the original bid. Plaintiff maintains that the trial court never stated whether the work agreed to and performed exceeded or varied from the work set forth in the written contract, and, if it did, quantum meruit should apply to the extent of the value of the work performed.

" 'Quantum meruit refers to the well-established principle that "the law implies a promise to pay for services performed under circumstances disclosing that they were not

19

gratuitously rendered." [Citation.] To recover in quantum meruit, a party need not prove the existence of a contract [citations], but it must show the circumstances were such that "the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." ' " (*County of Santa Clara v. Superior Court of Santa Clara* (2023) 14 Cal.5th 1034, 1049-1050.)

First, the trial court did not "ignore" its quantum meruit cause of action; it was considered and rejected. A paragraph of the statement of decision is devoted exclusively to that cause of action, as is a paragraph in the judgment.

In rejecting plaintiff's quantum meruit claim, the trial court stated that the parties had an enforceable contract, and therefore there was "no equitable basis for an implied-in-law promise to pay reasonable value for services rendered. There are no missing contractual terms in the original Contract. A quantum meruit analysis cannot supply 'missing' terms that are not missing. To hold otherwise would be at variance with the express terms of the Contract." The court's holding echoes case law: "Contractual terms regarding a subject are not implicitly missing when the parties have agreed on express terms regarding that subject. A quantum meruit analysis cannot supply 'missing' terms that are not missing. ' . . . [W]here the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability. . . .' " (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1419.) The court's ruling, essentially, concluded that the work performed by plaintiff was governed by, and came within the scope of, the parties' written contract.

As a general matter, it may be that a quantum meruit claim lies when *extra* work is performed outside the scope of a written contract. (See *Benson Electric Co. v. Hale Bros. Associates, Inc.* (1966) 246 Cal.App.2d 686, 697-698 [party may recover on quantum meruit basis for the value of "extras" performed for which there was no express contract]; see also *City Street Improv. Co. v. Kroh* (1910) 158 Cal. 308, 323 ["where extra work is

20

caused by authorized deviations from a building contract, and no agreement is made regarding the price thereof, or payment therefor, the law implies an agreement by the owner to pay the reasonable value of the extra work"], overruled on another ground in *Pasadena v. Charleville* (1932) 215 Cal. 384, 396.) However, "[e]xtra work . . . means work arising outside of and entirely independent of the contract–something not required in its performance, not contemplated by the parties, and not controlled by the contract." (*C.F. Bolster Co. v. J.C. Boespflug Construction Co.* (1959) 167 Cal.App.2d 143, 151.) "Where the extras are of a different character from the work called for in the contract and no price is agreed on for extra work, their reasonable value may be recovered." (*Ibid.*)

Thus, for plaintiff to recover under this theory, it had to identify "extra work" performed which arose "outside of and entirely independent of the contract–something not required in its performance, not contemplated by the parties, and not controlled by the contract," prove it performed such extra work, and prove the reasonable value of that extra work. (*C.F. Bolster Co. v. J.C. Boespflug Construction Co., supra*, 167 Cal.App.2d at p. 151.) Based on the doctrine of implied findings, and plaintiff's failure to object to the trial court's statement of decision, we must infer that the trial court found plaintiff failed to make one or more of these showings, resulting in its conclusion that the contract embodied the entirety of the agreement between the parties and the scope of work contemplated.

On appeal, plaintiff argues that the trial court "never states in its ruling whether the work agreed to and performed exceeded or varied from the work as stated in the contract. It is an open question whether the benefits obtained by Defendants are the same as those bargained for in the contract." According to plaintiff, if the work performed "exceeded or varied from" the work agreed upon in the contract, it is entitled to quantum meruit recovery based on the value of that additional work. Plaintiff continues: "Plaintiff performed significantly more work than was contemplated in the original written contract and the written change orders–a material term not contemplated in the written contract."

21

What plaintiff fails to do, once again, is direct us to anything in the record to demonstrate the trial court's implied findings and conclusions were wrong. Plaintiff does not cite to any evidence in the record at all. (See *County of Sacramento, supra*, 65 Cal.App.5th at p. 861.) The only record citations are to the statement of decision and the judgment. Plaintiff has not satisfied its burden of demonstrating its entitlement to relief from the judgment. (See generally *In re Marriage of Arceneaux, supra*, 51 Cal.3d at p. 1133; *Del Real, supra*, 95 Cal.App.4th at p. 766.)

DISPOSITION

The judgment is affirmed. Defendant shall recover its costs on appeal.[4] (Cal. Rules of Court, rule 8.278(a)(1), (2).)

\s_____,
Krause, J.

We concur:

\s_____,
Hull, Acting P. J.

\s_____,
Robie, J.

_____

[4] In its respondent's brief, without elaboration beyond stating that the appeal is meritless, and without analysis or citation to authority, defendant requests attorney's fees and sanctions. Defendant did not file a separate motion for sanctions, with a declaration supporting the amount sought, as required. (Rule 8.276.) "Sanctions cannot be sought in the respondent's brief." (*Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 919.) We deny defendant's request for sanctions generally and in the form of fees. (See *ibid.*; see also *Saltonstall v. City of Sacramento* (2014) 231 Cal.App.4th 837, 858-859 [denying the request for sanctions for failure to comply with rule 8.276(b)(1)].)

22